[Civ. No. 34136. Second Dist., Div. One. Dec. 15, 1969.]

CAREY ANTHONY WILSON et al., Plaintiffs and Appellants, v. JAMES EDDY et al., Defendants and Respondents.

614

## COUNSEL

Leonard Maizlish for Plaintiffs and Appellants.

Fierstein & Dolin and Harvey Fierstein for Defendants and Respondents.

## OPINION

LILLIE, J.—Plaintiffs appeal from an order quashing service of summons and complaint upon defendants who are conceded to have been residents of New York at the time in question and were never personally served. The attempted service was made upon their attorney, Mr. Antin, pursuant to a provision in an agreement, executed by plaintiffs but not by defendants, in which the latter "hereby irrevocably appoints MICHAEL ANTIN, ESQ., as agent to accept service of process upon EDDY [collective] at any time hereafter in connection with any matter arising out of or in connection" therewith. Plaintiffs filed suit when defendants allegedly breached other material portions of the above agreement by the terms of which, generally stated, defendants undertook to sell to plaintiffs their interests in certain residential property.

The motion was heard upon various declarations as to the factual issue of Antin's authority to accept service, and upon points and authorities as to the legal effect of such authority if the court found that it was given; also considered was Antin's depostion taken on plaintiffs' behalf.

From the foregoing emerge the following background facts of the within litigation. In the latter part of 1967 plaintiff Carey Wilson, who had long been interested in purchasing certain property, had a number of discussions with Mr. Antin after he had been advised by a real estate broker that Antin was representing defendants with respect to such property. Thereafter negotiations were carried on through Antin for defendants and plaintiffs' attorney, Leonard Maizlish; these negotiations resulted in the drafting of a proposed agreement by Antin, sent to Maizlish on January 12, 1968,

whereunder defendants offered to sell their interests in the property to plaintiffs. A few days later Maizlish sent Antin a revised draft of the agreement; Antin made two changes in the draft, sending Maizlish (on January 19) a copy of the new draft and advising Maizlish, according to the latter, that he had also sent a copy to New York that day for approval.

On January 25 Antin received a telegram from New York, concluding with the words "James and Audrey Eddy and approved by Samuel Fredman in behalf of Audrey Eddy"—it appears that the Eddys were in the process of getting a New York divorce and each had separate counsel. The approval referred to the "Agreement mailed with your letter of January 19th" but it was conditioned upon certain changes in the draft. Antin advised Maizlish of the telegram's receipt and, on January 26, sent the latter four copies of the agreement as finally revised. This was signed by plaintiffs and constitutes the agreement sued upon. In addition to the paragraph appointing Antin as agent to accept service, quoted at the beginning of this opinion, there is another paragraph material here: "14. This Agreement had been approved telephonically by EDDY and includes the two revisions provided in the telegraphic offer dated January 25, 1968, a copy of which is attached hereto. This Agreement shall be determined and deemed to be valid and binding upon signature thereof by WILSON on or before January 27, 1968." As mentioned earlier, there is nothing to indicate, nor is it claimed, that the finally revised agreement was ever signed by defendants. Although Maizlish and Antin were apparently in communication with each other during the first week of February 1968, further negotiations between the two attorneys were concluded when Antin told Maizlish (on February 8) that defendants had sold their interests in the property to another party. Almost immediately thereafter the present action was commenced.

According to plaintiffs, the two issues for determination here involve questions of law. First, can a private individual validly appoint another private individual as agent to accept service of process? It is provided by section 411, Code of Civil Procedure, that in the case of corporations, foreign and domestic, unincorporated associations, minors, wards, public agencies and others, the summons must be served by delivering a copy to an officer or agent of the defendant as the case may be; the statute further provides: "8. In all other cases to the defendant personally." ■ Service of summons in conformance with the mode prescribed by the above provision 8 being deemed juridictional, absent such service no jurisdiction is acquired by the court. (*Sternbeck* v. *Buck*, 148 Cal.App.2d 829, 834 [307 P.2d 970].) ■ Except for one case plaintiffs take a somewhat negative approach to the problem asserting that nothing in the statutes or

decisions can be found *prohibiting* appointment of an agent for the present purpose—this, despite the rule that the filing of the motion to quash placed upon them the burden of proving facts requisite to an effective service. (*Coulston* v. *Cooper,* 245 Cal.App.2d 866, 868 [54 Cal.Rptr. 302].) **(3)** The single decision specifically relating to the present point is *Solot* v. *Linch,* 46 Cal.2d 99 [292 P.2d 887], which declares (among other things) that "While 'personal service,' generally speaking, means the actual delivery of the process to the defendant in person [citation], service of process upon one whom a nonresident has, either expressly or by implication of law, appointed as his resident agent or lawful attorney upon whom legal process may be served may be effective as personal service upon the nonresident. [Citation.]" (P. 104.)

The statement of the law above quoted must be viewed in light of the issue there presented for determination, to wit, the effect of then section 404, Vehicle Code, upon the facts of the case. The statute provided that the Director of Motor Vehicles shall be the nonresident motorist's "lawful attorney upon whom may be served all lawful processes" and that service so prescribed "shall be of the same legal force and validity as if served on said nonresident personally in this State." Such language, it was held, indicated the intent of the Legislature to create a service of process tantamount for all purposes to personal service; it was accordingly concluded that section 473a, Code of Civil Procedure (allowing a defendant not personally served to answer to the merits of the action within one year after judgment) was inapplicable. It should be noted that under then section 404 the Director of Motor Vehicles was required to send a copy of the documents served upon him by registered mail to the defendant. No such duty is imposed upon Antin if, *arguendo,* it should be determined that he was a lawful agent upon whom process could be properly served; hence, it is not inconceivable that a Pandora's box of due process problems would directly arise therefrom if the fact of service was not communicated to his principals, either through inadvertence, death or otherwise.

We are thus called upon to resolve the second of the issues specified by plaintiffs. Did defendants validly appoint Antin as their agent to accept service of process? Plaintiffs assert that the question is one of law, but the assertion is not strictly a correct one. In addition to legal memoranda the hearing on defendants' motion was had upon declarations of the parties (or their representatives), including references to Antin's deposition. "When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court

will not be disturbed." (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349]; see also *Lynch* v. *Spilman,* 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636].) �In Much of the several declarations on each side contains conclusionary matter to which neither party, apparently disliking "to call the kettle black," has objected. It will suffice to note that conflicts have arisen from the declarations thus filed, and it must be presumed that the trial court impliedly resolved such conflicts in defendants' favor.

Commencing with the paragraph relating to the "irrevocable" appointment of Antin as defendant's agent, his testimony at the depostion reveals that such paragraph was the product of Maizlish and first appeared in one of the drafts received from his office; in the same connection Antin also testified that at no time did he tell Maizlish that defendants had agreed to appoint him as their agent to accept service. True, there are internal discrepancies in his deposition testimony which would support certain of the assertions made by plaintiffs in their briefs, but the problem of their resolution was for the court below. (*Dillard* v. *McKnight,* 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].) █ Even if the representations ascribed to Antin were actually made, absent express authority it is established that an attorney does not have implied plenary authority to enter into contracts on behalf of his client. (*Nellis* v. *Massey,* 108 Cal.App. 2d 724, 728 [239 P.2d 509].) █ Plaintiffs contend that "there existed at least ostensible authority" for Antin to submit the last revised agreement (the document sued upon) to plaintiffs for execution. But in *Nellis,* not wholly unlike the case at bar, "the attorneys during the negotiations repeatedly referred each proposal or counterproposal back to the client for approval. This course of conduct was of evidentiary significance in the trial court's determination of whether an ostensible authority had been conferred upon his attorney by the defendant." (P. 728.) Based upon conflicting evidence, the trial court found that defendant had not allowed plaintiff and plaintiff's attorney to believe that his (defendant's) attorney possessed authority to enter into the contract; the affirmance of the judgment was accordingly rested upon the familiar rule that such implied finding became conclusive on appeal.

Further, even assuming that Antin had the necessary express authority as defendants' agent to sell their property interests,[1] the circumstances

---

[1]Such an assumption would indeed be a rash one absent any evidence showing compliance with the statute of frauds which invalidates any agreement for the sale of the present property interest "unless the authority of the agent is in writing, subscribed by the party sought to be charged." (Civ. Code, § 1624, subd. 4.) Such evidence we cannot find. Too, Antin appears to have experienced some qualms in the premises when he mailed the original and copies of the agreement to Maizlish for plaintiffs' execution, his letter concluding as follows: "For the additional protection of all parties,

support the additional implied finding that plaintiffs' execution of the agreement sued upon did not create a contract between the parties. The only document in the record which bears the names of defendants, other than the unsigned instrument attached to the complaint, is the telegram from New York which is likewise made a part of that pleading. As testified to by Antin during the course of his deposition, defendants were about to terminate their marriage by divorce proceedings and each had separate counsel, Samuel Fredman being Mrs. Eddy's attorney. The telegram was signed "James and Audrey Eddy and approved by Samuel Fredman in behalf of Audrey Eddy," but the record does not show that defendants sent the telegram or caused it to be sent; to the contrary, in the present posture of the case it was apparently sent by Fredman whose authority to do so has never been established. Although the telegram could have been authenticated (Evid. Code, § 1420), at the time of the hearing below the question of its genuineness was for the trier of fact (*House Grain Co.* v. *Finerman & Sons,* 116 Cal.App.2d 485, 493 [253 P.2d 1034]), and presumably the trial court found against plaintiffs' contentions in this regard.

Even without the above obstacles there are still other circumstances militating against plaintiffs' position. The burden being upon plaintiffs in a proceeding of this kind, the language of the telegram does not insulate it from the claim (urged by defendants) that it is unclear as to which "agreement" reference is therein made. There were several drafts. Apparently the draft sent to New York on January 19 contained certain phraseology different from the final draft signed by plaintiffs and here sued on. Thus, paragraph 14 of the earlier draft reads as follows: "14. This Agreement shall not be deemed valid and binding upon either party until each party has physical possession of a fully executed copy hereof. Telegraphic *acceptance* shall be deemed satisfactory for the purposes of this Paragraph." (Italics added.) The same numbered paragraph of the final draft refers to the asserted telephonic approval thereof by defendants and further states that the agreement "includes the two revisions provided in the telegraphic *offer* dated January 25, 1968, a copy of which is attached hereto." (Italics added.) There is no showing that defendants ever ap-

---

I will send the revised agreements, executed by Mr. and Mrs. Wilson, to Mr. and Mrs. Eddy for their signatures and return to you a fully executed copy as soon as possible."

proved this material alteration from the language used in the prior draft which provided for a telegraphic acceptance and not a telegraphic offer.

For the foregoing reasons the order is affirmed.

Wood, P. J., and Thompson, J., concurred.