[L.A. No. 31823. Mar. 25, 1985.]

HARRIETTE BLANTON, Plaintiff and Appellant, v.
WOMANCARE, INC., et al., Defendants and Respondents.

398

COUNSEL

Irwin L. Schroeder and Schroeder & McElroy for Plaintiff and Appellant.

Rhoades, Hollywood & Neil, Daniel S. Belsky, Moore, Graves & Madory, Richard P. Booth, Jr., and Larry T. Pleiss for Defendants and Respondents.

OPINION

**GRODIN, J.**—Plaintiff Harriette Blanton appeals from a judgment upon an award entered for defendants in an arbitration proceeding arising out of the alleged malpractice of a medical student during an abortion performed in the clinic of defendant Womancare, Inc. Plaintiff contends the trial court erred in refusing to nullify the agreement providing for the dispute to be resolved through binding arbitration, because the stipulation to submit her claim to this procedure was made without her consent. Plaintiff's point is well taken. Accordingly, we reverse and remand to the trial court with instructions to set aside the arbitration agreement and subsequent award, and order a trial de novo.

On February 17, 1977, plaintiff allegedly suffered a perforated uterus during an abortion performed by a fourth-year medical student at the clinic of defendant Womancare. Plaintiff brought an action for malpractice against the clinic, the student, and the supervising physician. The case was set for trial on July 29, 1980.

Wesley Harris was employed by plaintiff as her attorney in the malpractice action. He prepared the necessary complaints, then requested that the trial be continued until April 6, 1981. His request was granted. Shortly thereafter, the trial was continued until July 30, 1981, again at Harris's behest. On July 28, 1981, two days before the case was finally to be tried, Harris requested an agreement from defendants that the case be submitted to arbitration.

An examination of Harris conducted by the trial judge reveals Harris discussed the possibility of arbitration with his client at some point before he approached defendants with his offer to arbitrate. Harris conceded, however, that his client would only consent to arbitration if her right to a trial de novo were preserved.[1] Nevertheless, when on July 28, 1981, Harris

---

[1]Harris testified as follows:

"Q. Did she tell you when you had the discussion and recommended arbitration that she objected to any arbitration?

"A. Yes. She indicated that she wanted a trial and I thought that it would be best to go to arbitration and to see what an arbitrator would award, and if she wasn't happy we could go to trial.

"Q. What did she say?

"A. She said, that's fine.

"Q. She said it's all right to go to arbitration?

"A. But not binding.

"Q. All right. Was that conversation before you signed the letter agreeing to binding arbitration on her behalf?

"A. There was no discussion about binding arbitration before I signed this letter. . . .

"Q. Did you discuss binding arbitration with her?

"A. Never, I never even knew there was binding arbitration until you mentioned it."

obtained a stipulation from defendants that the case be submitted to arbitration, the agreement contained the following provisions:

"1. The captioned case will be taken off the trial calendar and submitted to *binding* arbitration.

"2. Any award rendered to the plaintiff in arbitration shall be limited to a maximum of $15,000.

"3. Daniel S. Belsky, attorney for defendant, Womancare, shall have the right to select the arbitrator pursuant to the following conditions:

"(a) There shall be only one arbitrator.

"(b) The arbitrator shall be an individual reasonably familiar with the law pertaining to medical malpractice.

"(c) Mr. Belsky's right to choose the arbitrator shall be exclusive in the event he chooses an arbitrator whose practice consists primarily of defending medical malpractice actions.

"(d) In the event Mr. Belsky chooses an arbitrator whose practice consists primarily of prosecuting medical malpractice actions, said individual shall also be approved by Mr. Wes Harris."[2] (Italics supplied.)

The stipulation was approved by the court, which issued an order to arbitrate "pursuant to section 1141.10 et seq. of the Code of Civil Procedure and California Rules of Court, section [sic] 1600 et seq." The order declared, "The arbitration and award shall be binding." Harris also sought, and obtained, a dismissal with prejudice of defendant's supervising physician from the lawsuit.

Plaintiff did not learn of this stipulation, nor of the dismissal of the supervising physician, for nearly three months. When apprised that her attorney had submitted her dispute to binding arbitration, she immediately objected, and fired Harris. She then hired new counsel, and through him moved to invalidate the stipulation to binding arbitration executed by Harris, as well as the stipulation to dismiss the supervising doctor from the lawsuit, on the ground she had never given her consent to either decision.

---

[2]Harris testified, and plaintiff argues, that the trial court gave the attorneys the limited option of going to trial or accepting binding arbitration. It was under the compulsion of this narrow choice, plaintiff contends, that Harris submitted to binding arbitration. While the record is not clear on the point, it appears that defendant's counsel indicated it would submit to arbitration only if it were binding; under these circumstances, the judge simply stated the choices available to the parties. Harris chose binding arbitration.

The physician withdrew his opposition to the motion to set aside the dismissal, and was reinstated as a party defendant. The trial court, however, affirmed the validity of the agreement for binding arbitration, apparently in the belief the agreement concerned a "procedural" matter within the scope of an attorney's unilateral discretion.[3] After a continuance in the arbitration proceeding was granted to allow new counsel an opportunity to prepare for the hearing, the proceeding was held and the arbitrator ruled for the defense. Plaintiff's new attorney filed a request for trial de novo, but was notified that since the arbitration was binding the request was "not acceptable." Thereafter, the award was entered as a judgment and plaintiff appealed.

## I

The Judicial Arbitration Act (Code Civ. Proc., § 1141.10 et seq.)[4] was enacted by the Legislature in 1978 as a means of coping with the increasing cost and complexity of litigation in civil disputes. In the preamble to the statute, the Legislature "finds and declares that arbitration has proven to be an efficient and equitable method for resolving small claims, and that courts should encourage or require the use of arbitration for such actions whenever possible." (§ 1141.10, subd. (a).) The act mandates submission to arbitration of certain classes of at-issue civil actions where the amount in controversy is determined to be not in excess of a specified amount (§ 1141.11), and permits submission to arbitration upon stipulation by the parties regardless of the amount in controversy (§ 1141.12).

The act provides, however, that "[a]ny party may elect to have a de novo trial, by court or jury, both as to law and facts," and that an arbitration award is final if a request for a de novo trial is not "filed within 30 days after the date the arbitrator files the award with the court." (§ 1141.20.) If there is no request for a de novo trial and the award is not vacated (§ 1141.22) the award is entered in the judgment book in the amount of the award (§ 1141.23).

Opportunity for de novo trial is what principally distinguishes court-annexed arbitration pursuant to the Judicial Arbitration Act from private arbitration conducted pursuant to the agreement of the parties and subject to

---

[3]"You say that's [the determination to submit a dispute to binding arbitration] a substantive right. He says it's a procedural matter . . . . All right. We will find out . . . . I will deny the order to set aside the binding arbitration."

[4]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

the arbitration statute (§ 1280 et seq.).[5] The very essence of the term "arbitration" in the latter context connotes a binding award. (Domke on Commercial Arbitration (rev. ed. 1984) p. 1.) The Legislature was well aware of the distinction between the two types of arbitration. The Judicial Arbitration Act provides: "The provisions of this chapter shall not be construed in derogation of the provisions of Title 9 (commencing with Section 1280) of Part 3, and, to that extent, the provisions of this chapter and that title are mutually exclusive and independent of each other." (§ 1141.30.)

The stipulation which the attorneys entered into in this case, since it provided that the award would be binding, was something of a hybrid. From a legal standpoint it could be viewed as an agreement for private arbitration, governed by the general arbitration statute, or as an agreement for judicial arbitration with advance waiver of the right to request a de novo trial. Most likely the attorneys contemplated the latter, since the agreement specifically refers to the Judicial Arbitration Act. In either event, however, the legal effect of the agreement, if it be given effect, was to relinquish the rights of the parties to judicial trial, whether by court or jury, and to waive any right to judicial review except upon the extremely narrow grounds accorded to arbitration awards under the arbitration statute and the Judicial Arbitration Act alike. (§ 1286.2; Cal. Rules of Court, rule 1615(d).)

Of course, such an agreement may often be in the best interests of a client. ▪ Here, however, the client did not consent to the agreement; she did nothing beyond retention of the attorney to suggest that he had authority to enter into such an agreement on her behalf; and she repudiated the agreement as soon as she learned of it. The question is whether she is nevertheless bound by her attorney's signature, purportedly on her behalf.[6]

---

[5]There are other important differences as well. Private arbitration occurs only pursuant to agreement, and it is the agreement which determines the details of the process. (§ 1282 et seq.) The parties are themselves responsible for payment of the arbitrator and associated costs. Except in personal injury cases there is no provision for discovery unless the agreement itself so provides. (§ 1283.1.) While the statute provides mechanisms for judicial enforcement of the agreement (§ 1281.2) and confirmation of the award (§ 1285 et seq.) both mechanisms are extraneous to the process and, ordinarily, to the contemplation of the parties. Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts.

Judicial arbitration, by contrast, is an adjunct to litigation. It is mandatory in certain cases, and it occurs only when an action has been filed. (See Cal. Rules of Court, rule 1600.) The general costs of arbitration are borne by the public, not by the parties, except that a party who requests a trial de novo and does not succeed in obtaining a judgment more favorable than the award must pay. (§ 1141.21.) Rules adopted by the Judicial Council provide for full discovery (Cal. Rules of Court, rule 1612) as well as other aspects of the proceeding (rules 1613, 1614).

[6]The propriety of this appeal has not been questioned by respondent. The appeal is proper whether considered as one from the entry of an award in a judicial arbitration proceeding

## II

In our analysis of this question we distinguish at the outset between the rights which a client may have against his attorney for breach of a duty owed the client, and the right which an opposing party or the court may have to rely upon a stipulation or agreement which an attorney has made, purportedly on his client's behalf. The two categories are related, but not necessarily congruent, for a client may be bound by the actions of his attorney and at the same time have a legal claim against him on the ground that those actions were undertaken without or in excess of authority. Here, the question concerns the binding effect of the attorney's agreement.

As a general proposition the attorney-client relationship, insofar as it concerns the authority of the attorney to bind his client by agreement or stipulation, is governed by the principles of agency. (*Fidelity & Casualty Co. of New York* v. *Abraham* (1945) 70 Cal.App.2d 776, 783 [161 Cal.Rptr. 689].) Hence, "the client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied) or his apparent or ostensible authority; or by unauthorized acts ratified by the client." (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 107, p. 117; *Yanchor* v. *Kagan* (1971) 22 Cal.App.3d 544, 549 [99 Cal.Rptr. 367].)

It is undisputed in this case that plaintiff's attorney, in signing the arbitration agreement, acted not only without his client's express authority but contrary to her express instructions. Consequently, though subject to the possibility of ratification which we consider later in this opinion, she is bound by the agreement only if the attorney had either implied actual authority or apparent authority to enter into the agreement on her behalf.

An attorney retained to represent a client in litigation is clothed with certain authority by reason of that relationship. "The attorney is authorized by virtue of his employment to bind the client in procedural matters arising during the course of the action . . . . 'In retaining counsel for the prosecution or defense of a suit, the right to do many acts in respect to the cause is embraced as ancillary, or incidental to the general authority conferred,

---

(§ 1141.23) or one from a judgment confirming an award made under the Arbitration Act (§§ 1287.4, 1294, subd. (d)). The entry of an award in judicial arbitration is not generally an appealable order. However, absent an effective advance waiver of the right to trial de novo, the authority to enter the award exists only "[if] there is no request for a de novo trial" in judicial arbitration proceedings (§ 1141.23). Inasmuch as the record in this case did not reflect a waiver to the right to trial de novo, and there was a request for trial de novo, the judgment or entry of the award was not one authorized by the Judicial Arbitration Act, and thus was a judgment made appealable by section 904.1. If considered a judgment entered on the confirmation of an award made under the Arbitration Act it is expressly made appealable by section 1294, subdivision (d).

and among these is included the authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial. Stipulations thus made, so far as they are simply necessary or incidental to the management of the suit, and which affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client, are binding on the client.' [Citation.]" (*Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 276-277 [74 Cal.Rptr. 544, 449 P.2d 760].)

The authority thus conferred upon an attorney is in part apparent authority—i.e., the authority to do that which attorneys are normally authorized to do in the course of litigation manifested by the client's act of hiring an attorney—and in part actual authority implied in law. Considerations of procedural efficiency require, for example, that in the course of a trial there be but one captain per ship. An attorney must be able to make such tactical decisions as whether to call a particular witness, and the court and opposing counsel must be able to rely upon the decisions he makes, even when the client voices opposition in open court. (*Nahhas* v. *Pacific Greyhound Lines, Inc.* (1961) 192 Cal.App.2d 145, 146 [13 Cal.Rptr. 299].) ▌ In such tactical matters, it may be said that the attorney's authority is implied in law, as a necessary incident to the function he is engaged to perform. (See 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 112, p. 123; Spiegel, *Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession* (1979) 128 U.Pa. L.Rev. 41, 63.)[7]

An attorney is not authorized, however, merely by virtue of his retention in litigation, to "impair the client's substantial rights or the cause of action itself." (*Linsk* v. *Linsk, supra,* 70 Cal.2d at p. 276.) For example, "the law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation. [Citations.]" (*Whittier Union High Sch. Dist.* v. *Superior Court* (1977) 66 Cal.App.3d 504, 508 [136 Cal.Rptr. 86]; see also *Linsk* v. *Linsk, supra,* 70 Cal.2d at p. 278.) Similarly, an attorney may not "stipulate to a matter which would eliminate an essential defense [citation]. He may not agree to the entry of a default judgment [citation], may not . . . stipulate that only nominal damages may be awarded [citation] and he cannot agree to an increase in the amount of the judgment against his client. [Citation.] Likewise, an attorney is without authority to waive findings so

---

[7]Section 283 provides in part: "An attorney and counselor shall have authority: 1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the Clerk, or entered upon the minutes of the Court, and not otherwise . . . ." This provision represents neither a grant nor a limitation of substantive authority; rather, it is a prescription of the form of stipulations. (See *Preston* v. *Hill* (1875) 50 Cal. 43, 53; *Redsted* v. *Weiss* (1945) 71 Cal.App.2d 660, 663 [163 Cal.Rptr. 105].)

that no appeal can be made . . . ." (*Linsk* v. *Linsk, supra,* 70 Cal.2d at p. 278; see *Bowden* v. *Green* (1982) 128 Cal.App.3d 65, 73-74 [180 Cal.Rptr. 90] [no authority to dismiss cross-complaint].) Such decisions differ from the routine and tactical decisions which have been called "procedural" both in the degree to which they affect the client's interest, and in the degree to which they involve matters of judgment which extend beyond technical competence so that any client would be expected to share in the making of them.

In *Linsk* we applied this principle to hold that an attorney lacked authority to stipulate, over his client's objection, that after a mistrial due to the disability of the trial judge the case could be decided by a different judge entirely on the basis of the previous record. (*Linsk* v. *Linsk, supra,* 70 Cal.2d at pp. 278-279.) The factual context of that case differs from this one, in that the trial judge and defense counsel in *Linsk* were aware of plaintiff's objection to the stipulation when they accepted it. (*Id.,* at p. 276.) Thus, our holding represented a limitation upon the attorney's implied actual authority, whereas in this case, because defense counsel was unaware of plaintiff's objection, the question is one of apparent authority. Nonetheless, we arrive at the same conclusion with respect to the agreement to arbitrate which is at issue here.[8]

---

[8]It is said in an early case, by way of dicta, that an attorney is "presumed" to have authority even with respect to substantial matters affecting the client's cause, but that the presumption is "rebuttable," so that "whenever it appears that an attorney entered into an agreement in direct opposition to instruction of the client, there is no ground for such presumption." (*Knowlton* v. *MacKenzie* (1895) 110 Cal. 183, 188 [42 P. 580]; see also *Linsk* v. *Linsk, supra,* 70 Cal.2d 272, 280.) Whatever this presumption may mean in other contexts, it has no application here, since it is clear that in this case the agreement was entered into in direct opposition to the instructions by plaintiff to her attorney.

In *Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 459-460 [289 P.2d 466], we grappled with the application of the "presumption" to a case involving a collateral attack on a Nevada judgment, entered pursuant to an attorney's dismissal of his client's action with prejudice. While upholding the Nevada judgment, we made reference to "authorities in California and Nevada which hold that on collateral attack the presumption of the attorney's authority is conclusive." (*Id.,* at p. 460.) Since this case involves no collateral attack upon a judgment, the holding in *Gagnon* is inapposite.

Respondents cite *Church* v. *Church* (1940) 40 Cal.App.2d 701 [105 P.2d 643] to support their contention that beyond the mere rebuttable presumption of authority, attorneys possess full-fledged apparent authority to stipulate away the substantial rights of their clients. The appeal in *Church,* however, was based on an allegation of fraud, not on grounds of the absence of apparent authority. The most that can be said for *Church* is that, following *Knowlton,* the Court of Appeal recited the rebuttable presumption standard. Indeed, that is the principle for which it is cited in *Gagnon, supra,* 45 Cal.2d at page 460.

Respondents also cite *Ghiringhelli* v. *Riboni* (1950) 95 Cal.App.2d 503 [213 P.2d 17], for the proposition an attorney possesses apparent authority to dismiss an action with prejudice. Plaintiff, however, made no challenge at all to the authority of counsel to do so. The authority of counsel to dismiss the action was not even at issue, and the court did not rule on any authority question.

It is, of course, accepted practice within the legal profession, and one that is commendable, for attorneys to rely upon representations made by other attorneys with respect to the scope of their authority. ■ As in the case of any other agency, however, apparent authority is created, and its scope defined, by the acts of the principal in placing the agent in such a position that he appears to have the authority which he claims or exercises. If authority is lacking, then nothing the agent does or says can serve to create it. (See Seavey, Agency (1st ed. 1964) Definitions, § 8D, p. 13.)

This was the situation in *Burns* v. *McCain* (1930) 107 Cal.App. 291 [290 P. 623], in which attorneys entered into a written stipulation purporting, on behalf of their respective clients, to compromise pending litigation by payment of a specified amount by defendant to plaintiff. Defendant, as it turned out, was unaware of the stipulation and had not authorized her attorney to enter into it. On that basis the trial court concluded that the stipulation should not be enforced, and gave judgment for defendant.

The Court of Appeal affirmed, reasoning that "[t]he mere employment of an attorney to represent a client in litigation does not carry with it the power to compromise that litigation," and that such a purported compromise should not be binding upon the client where it had not "actually been completed" or carried into judgment. (107 Cal.App. at pp. 294-295.) Recognizing that such a rule places a strain upon the traditional pattern of reliance among attorneys, the court observed that the "high plane upon which attorneys customarily place their agreements with each other cannot be allowed to overthrow the well-established principles of the law of agency, where the rights of the clients as between themselves are concerned." (*Id.*, at p. 297; see also *Price* v. *McComish* (1937) 22 Cal.App.2d 92, 99 [70 P.2d 978].) This holding is in accord with the rule in other jurisdictions that, when it comes to such a substantial matter as compromise of an action, "a person dealing with an attorney, as dealing with any agent, must ascertain whether the agent has authority to do the purported act and assumes the risk if in fact the agent has no such authority." (*McKeague* v. *Freitas* (1953) 40 Hawaii 108, 113; see also *Precious* v. *O'Rourke* (1930) 270 Mass. 305 170 N.E. 110, 111 ["When an attorney undertakes to bind his client by an agreement to compromise his client's substantial rights, the opposing party must ascertain at his peril whether the attorney has authority to make the settlement"]; accord, *Life & Casualty Ins. Co.* v. *Bell* (1938) 235 Ala. 548 [180 So. 573, 576].)

The same language is often used in the cases to define both the attorney's actual and apparent authority, thus suggesting that the test is the same with respect to both. ■ We need not decide in this case whether that is true in all respects, or whether there may be some matters as to which the jus-

tification of an attorney's reliance upon the stipulation of his opponent would depend upon whether the relying attorney was aware of objection on the part of his opponent's client, for in this case the lack of justifiable reliance is clear.[9] The agreement which plaintiff's attorney entered into, purportedly on his client's behalf, called for binding arbitration which, as we have explained, entails a waiver of all but minimal judicial review. It provided for unilateral selection of the arbitrator by the defendant's attorney, from among attorneys whose practice consists primarily in *defending* medical malpractice actions. And, it waived any right to recovery beyond $15,000. By any test, these are consequences which affected substantial rights of the client.

Moreover, the agreement did not constitute a tactical maneuver in pending litigation; rather, it called for a *diversion* of the dispute from the judicial to the arbitral arena. It was a contract to arbitrate, such as might be entered into in the absence of any litigation at all.

■ "[A]bsent express authority, it is established that an attorney does not have implied plenary authority to enter into contracts on behalf of his client. [Citation.]" (*Wilson* v. *Eddy* (1969) 2 Cal.App.3d 613, 618 [82 Cal.Rptr. 826].) And, that authority is not enlarged simply because the contract is entered into in conjunction with pending litigation. In *Woerner* v. *Woerner* (1915) 171 Cal. 298 [152 P. 919], attorneys for parties to a divorce action entered into a stipulation that the husband would convey certain lands to the wife. In holding that the stipulation did not give rise to an enforceable agreement, this court stated: "An attorney has no general authority to act for his client. His stipulation for a disposition of his client's property cannot bind the client if the attorney had no legal authority to make it, at least not unless it is acted on by the court and carried into the judgment." (*Id.,* at p. 299.)

■ Here, similarly, an attorney, merely by virtue of his employment as such, has no apparent authority to bind his client to an agreement for arbitration. We find no reason in logic, or policy, for holding his apparent authority in that respect is enlarged by reason of the fact that he has been retained to engage in litigation. When a client engages an attorney to litigate in a judicial forum, the client has a right to be consulted, and his consent

---

[9]One commentator suggests that the traditional subject-matter/procedure test does not adequately explain the cases which address the power of the lawyer to bind his client, and that the cases are better explained on the basis of considerations of prejudice and judicial economy, with the timing of the client's objection being a key consideration. (Spiegel, *Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession, supra,* 128 U.Pa. L.Rev. 41, 54-65.) It would appear, indeed, that such equitable considerations have played a role in some of the decisions. (E.g., *Burns* v. *McCain, supra,* 107 Cal.App. at p. 297.) In this case, as we observe, *post,* equitable considerations support the plaintiff's position.

obtained, before the dispute is shifted to another, and quite different, forum, particularly where the transfer entails the sort of substantial consequences present here.

This case is distinguishable from *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699 [131 Cal.Rptr. 882, 552 P.2d 1178], upon which defendant relies. In that case we held that the Board of Administration of the State Employees Retirement System, authorized by statute to enter into contracts with health care providers to provide benefits to members of the system, had *actual* authority to include in such contracts a provision for arbitration of medical malpractice disputes. The basis for our holding was Civil Code section 2319, which authorized an agent such as the PERS Board "[t]o do everything necessary or proper and usual . . . for effecting the purpose of this agency." After surveying judicial attitudes toward binding arbitration, and upon finding arbitration an "accepted and favored method of resolving disputes" (*id.*, at p. 706), we ruled that the decision to submit all state employee claims to arbitration under the Kaiser Health Plan was "proper and usual." An attorney, by contrast, is not a general agent, and has no general authority to enter into contracts on behalf of his client.

Finally, while unauthorized acts of an attorney may be binding upon his client through ratification (*Fidelity & Casualty Co. of New York v. Abraham, supra,* 70 Cal.App.2d 776, 783), no ratification appears here. Immediately upon learning of the arbitration agreement plaintiff fired her attorney and engaged new counsel to set it aside. At that point defense counsel, knowing of plaintiff's objections and her attorney's lack of actual authority, could have allowed the case to proceed to trial but chose not to do so. Only after the trial judge refused to invalidate the agreement, and reaffirmed his order that the case proceed to arbitration, did plaintiff appear and participate in the arbitration hearing.

■ Under the general arbitration statute, the validity of an order to arbitrate may in some circumstances be challenged by petition for writ of mandate (*Lesser Towers, Inc. v. Roscoe-Ajax Constr. Co.* (1969) 271 Cal.App.2d 675, 692-693 [77 Cal.Rptr. 100]), but failure to pursue that remedy does not preclude subsequent judicial review (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 [133 Cal.Rptr. 775, 84 A.L.R.3d 343]), the underlying policy being to encourage parties to arbitrate first and litigate, if necessary, later. We perceive no reason for a different policy, or rule, under the Judicial Arbitration Act.

The judgment is reversed.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Lucas, J., concurred.

**BIRD, C. J.,** Concurring.—I write separately because the majority fail to set forth any guidelines as to when an attorney may act without the express consent of his or her client. Rather than providing clarity in this troublesome area,[1] the majority have introduced uncertainty. Further, the decision to waive the constitutional right to a trial by jury must always rest with the client, not the attorney.

## I.

The allocation of decision-making authority between client and attorney is a difficult problem. It involves practical, ethical and philosophical considerations. (See Burt, *Conflict and Trust Between Attorney and Client* (1981) 69 Georgetown L.J. 1015; Note, *Balancing Competing Discovery Interests in the Context of the Attorney-Client Relationship: A Trilemma* (1983) 56 So.Cal.L.Rev. 1115 [hereafter Note, *Balancing Competing Discovery Interests*]; Martyn, *Informed Consent in the Practice of Law* (1980) 48 Geo.Wash.L.Rev. 307; Spiegel, *Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession* (1979) 128 U.Pa. L.Rev. 41; Spiegel, *The New Model Rules of Professional Conduct: Lawyer-Client Decision Making and the Role of Rules in Structuring the Lawyer-Client Dialogue,* 1980 Am.Bar Found. Research J. 1003; Lehman, *The Pursuit of a Client's Interest* (1979) 77 Mich. L.Rev. 1078.) Clear guidance on the scope of an attorney's implied and apparent authority and the legal consequences of the allocation of that authority would benefit both attorneys and clients. Unfortunately, the majority fail to give any guidance.

A reading of the cases and authorities reveals that when courts refer to "substantial rights," they mean *important* or "essential" rights (*City of Fresno* v. *Baboian, supra,* 52 Cal.App.3d at p. 758), rights " 'affecting the merits of the cause' " (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 113, p. 125) or "serious steps" in the litigation (*ibid.*). For example, the decision to settle or dismiss a cause of action affects a "substantial right," and an attorney must obtain the client's consent before taking either action. (*Bowden* v. *Green* (1982) 128 Cal.App.3d 65, 73 [180 Cal.Rptr. 90]; *Whittier Union High Sch. Dist.* v. *Superior Court* (1977) 66 Cal.App.3d 504, 508-509 [136 Cal.Rptr. 86]; *Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 278 [74 Cal.Rptr. 544, 449 P.2d 760].) Similarly, because a "substantial right" is affected, an attorney has no independent authority to waive the right to appeal (1 Witkin, *supra,* § 121 at pp. 131-133), to eliminate an essential defense (*Fresno City High School Dist.* v. *Dillon* (1939) 34 Cal.App.2d 636, 646-647 [94 P.2d 86]), to dispose of a client's property (*Woerner* v.

---

[1]See, e.g., *City of Fresno* v. *Baboian* (1975) 52 Cal.App.3d 753, 757 [125 Cal.Rptr. 332] ("The rules delineating the extent of an attorney's authority are not altogether clear and concise. . . .").

*Woerner* (1915) 171 Cal. 298, 299 [152 P. 919]) or to stipulate to a finding of negligence irrespective of the record (*Harness* v. *Pacific Curtainwall Co.* (1965) 235 Cal.App.2d 485, 491 [45 Cal.Rptr. 454].) (See *Linsk, supra,* 70 Cal.2d at pp. 277-278 and 1 Witkin, *supra,* § 116, at p. 127 for additional examples.)

When no substantial right is implicated, an attorney must be free to act independently. It is essential to the efficient conduct of the client's case and the accomplishment of the client's ultimate goals that an attorney have the authority to make independent decisions in the day-to-day management of civil litigation. This authority "allow[s] the lawyer-professional to apply his technical expertise[.]" (Spiegel, *The New Model Rules of Professional Conduct: Lawyer-Client Decision Making and the Role of Rules in Structuring the Lawyer-Client Dialogue, supra,* Am.Bar Found. Research J. at p. 1004.) It also protects the lawyer's professional reputation and preserves the lawyer's role as an officer of the court. (See 1 Witkin, *supra,* § 114, at p. 125.)

The effective management of litigation requires independent decisions by the attorney regarding not only procedural matters but also certain *substantive* matters—for example, it may include the legal theories or arguments to be advanced. Routine and technical matters, including those ordinary matters which arise in the course of litigation, may be handled independently by the attorney as a necessary aspect of the professional management of the case. On the other hand, decisions which affect "substantial rights," whether they be denominated "procedural" or "substantive," must involve the client.[2]

Rather than define the standard as "substantial rights" versus "procedural matters," the inquiry should seek to differentiate between decisions affecting important, substantial rights and decisions on routine matters. This approach would provide the practitioner with more useful guidance.

## II.

Whatever formulation is used to determine when an attorney has the authority to make decisions on the client's behalf, the decision to waive the

---

[2]Commentators who advocate an "informed consent" doctrine for the attorney-client relationship favor "complete communication" between an attorney and client so that decisions regarding litigation can be made through their "combined effort and knowledge." (Note, *Balancing Competing Discovery Interest, supra,* 56 So.Cal. L.Rev. at p. 1124; see also Martyn, *Informed Consent in the Practice of Law, supra,* 48 Geo. Wash. L.Rev. 307; Spiegel, *Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession, supra,* 128 U.Pa. L.Rev. 41.) One commentator cites evidence that "plaintiffs who actively participated in their cases obtained significantly better results than those who delegated responsibility to an attorney." (Note, *Balancing Competing Discovery Interests, supra,* at p. 1124.)

fundamental right to a jury trial should rest with the client. By stipulating to binding arbitration, the attorney in this case deprived his client of her right to a jury trial without her knowledge or consent.

The right to trial by jury, in both civil and criminal matters, is "a basic and fundamental part of our system of jurisprudence." (*Byram* v. *Superior Court* (1977) 74 Cal.App.3d 648, 654 [141 Cal.Rptr. 604]; accord *Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d 746, 756 [163 Cal.Rptr. 223].) It is a historically important right, which has been called " 'the principal bulwark of our liberties.' " (Patterson, *Juries in Civil Cases* (1934) 9 State Bar J. 208, 209, quoting 3 Blackstone's Commentaries, ch. XXIII, p. 349.) The right to jury trial in civil cases is expressly guaranteed by our Constitution. (Cal. Const., art. I, § 16.)[3]

Under the California Constitution, the right to a jury in a civil cause "may be waived *by the consent of the parties* expressed as prescribed by statute." (Art. I, § 16, italics added.) The right to a trial by jury is fundamental and "should be zealously guarded by the courts." (*Byram, supra,* 74 Cal.App.3d at p. 654; accord *Ramirez, supra,* 103 Cal.App.3d at p. 756.) "In case of doubt . . ., the issue should be resolved in favor of preserving a litigant's right to trial by jury. . . . [¶] That right may not be waived by implication, but only affirmatively and in the manner designated by Code of Civil Procedure section 631." (*Byram, supra,* 74 Cal.App.3d at p. 654.)

Section 631 of the Code of Civil Procedure describes the ways in which a party may waive the right to trial by jury. These include the filing of written consent with the clerk or judge and the offering of oral consent in open court. (Code Civ. Proc., § 631, subds. 2, 3.)[4] Although the acts described will normally be *performed* by counsel, the statute by its terms is concerned with waiver of a jury trial *"by the several parties."* (Code Civ. Proc., § 631, italics added.)

Nothing in the statute gives an attorney the authority to waive the client's right to a jury trial without the client's knowledge and consent. As a Washington appellate court has held in interpreting similar constitutional and statutory provisions, "no client should be at the mercy of his attorney, who, without the authority or knowledge of his client stipulates away such a right

---

[3]Article I, section 16 of the California Constitution provides that "[t]rial by jury is an inviolate right and shall be secured to all . . . ."

[4]Waiver may also result from the failure to appear at trial, to announce at the prescribed time that a jury is required, or to deposit jury fees and transportation costs. (Code Civ. Proc., § 631, subds. 1, 4-7.) Because of the importance of the right to a jury trial, section 631 gives the trial court discretion to allow a jury trial even if the party has previously waived that right. (Code Civ. Proc., § 631; *Hernandez* v. *Wilson* (1961) 193 Cal.App.2d 615, 618-619 [14 Cal.Rptr. 585].)

directly contrary to the client's interest. . . ." (*Graves* v. *P. J. Taggares Co.* (1980) 25 Wn.App. 118 [605 P.2d 348, 353], affd. (1980) 94 Wn.2d 298 [616 P.2d 1223];[5] see also *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 718 [131 Cal.Rptr. 882, 552 P.2d 1178] (dis. opn. of Mosk, J.).) If an attorney has no independent power to stipulate to a settlement, to eliminate an essential defense, or to waive the right to an appeal, surely he should have no power to waive the client's fundamental constitutional right to a trial by jury.

An attorney should explain to the client the strategic considerations that determine whether a jury trial or some other form of dispute resolution should be utilized. The attorney's professional expertise is vital to any decision. However, the ultimate determination to waive a right as fundamental and "substantial" as the right to a jury trial should rest with the client.

---

[5]In *Graves,* defense counsel in a civil trial withdrew the demand for a jury without the client's authorization. The appellate court vacated the judgment entered after a nonjury trial and remanded the case. (*Graves* v. *P. J. Taggares Co., supra,* 605 P.2d at p. 353.) The Washington Supreme Court agreed with the Court of Appeals, holding that "the client must specifically consent to the withdrawal of a jury demand." (*Graves* v. *P. J. Taggares Co., supra,* 616 P.2d at p. 1228.) The Washington Constitution guarantees the right to a trial by jury in a civil action, using language which is very similar to the provision in the California Constitution. (Wash. Const., art. 1, § 21.)