[No. G026579. Fourth Dist., Div. Three. Dec. 27, 2001.]

CPI BUILDERS, INC., Plaintiff and Respondent, v.
IMPCO TECHNOLOGIES, INC., Defendant and Appellant.

1168

## COUNSEL

Seyfarth, Shaw, Fairweather & Geraldson, Seyfarth Shaw, Thomas Larry Watts and Steven B. Katz for Defendant and Appellant.

Pistone, Baruch & Wolder, Law Offices of Joel W. Baruch and Joel W. Baruch for Plaintiff and Respondent.

## OPINION

**MOORE, J.**—Impco Technologies, Inc. (Impco) appeals from an order vacating a previous order that the matter should proceed to binding arbitration. Impco argues there was a stipulation signed by the attorneys after each received its client's authorization. Respondent CPI Builders, Inc. (CPI) claims that it withdrew its consent to its attorney to enter into binding arbitration, and the court properly refused to order arbitration. Because CPI's withdrawal of consent was not communicated to Impco before Impco accepted the offer, we conclude there is a binding contract to arbitrate and, accordingly, reverse.

I

FACTS

On July 10, 1998, CPI brought suit against Impco, alleging breach of contract and intentional and negligent misrepresentation involving a construction project. CPI was represented by Attorney Marvin D. Mayer (Mayer). On September 14, 1998, the law firm of Seyfarth, Shaw, Fairweather & Geraldson (Seyfarth) filed Impco's answer. Impco's first amended cross-complaint and CPI's general denial followed.

There were some discussions between the attorneys regarding mediating or arbitrating the case. On September 8, 1999, Seyfarth wrote to inquire

whether Mayer was proposing binding or nonbinding arbitration. During a telephone conversation on September 17, 1999, the attorneys agreed to binding arbitration. In a September 18, 1999 letter primarily about CPI's delinquent payment for his legal services, Mayer told CPI's president and sole shareholder, Diana Musgrave (Musgrave), "I have tentatively agreed with Larry Watts to submit your case to binding arbitration before a retired Orange County judge, whom I have the greatest respect for. That will be a cheaper process than a court trial. The October trial date will be vacated. [¶] Unfortunately, I will no longer be able to act as your attorney, and you will have to find someone else to represent you." On September 27, 1999, Mayer signed a stipulation to submit the matter to binding arbitration and sent it to Seyfarth.

The facts then become a little fuzzy. From the appellate record, it seems that everyone agrees Musgrave authorized Mayer to consent to binding arbitration, at least for about 20 hours. Musgrave says her noontime September 27, 1999 consent was reluctant.[1] She says she was upset about the September 18, 1999 letter Mayer had sent to her stating that he needed to be relieved as counsel shortly before the trial date. But she says she called Mayer's office at 8:00 a.m. on September 28, 1999, and left a message that she had changed her mind. A CPI employee, Stacy Budai, says she received a telephone call from Mayer's office on September 29, 1999, informing her that it was " 'too late' " for CPI to withdraw its stipulation for binding arbitration.

Meanwhile, unaware that Mayer's authority had been revoked, Impco's attorney signed the stipulation on September 29, 1999, and lodged it with the court the next day.

On October 7, 1999, Seyfarth received two letters. One was from Musgrave stating she had authorized Joel W. Baruch of the law firm of Pistone,

---

[1] In an October 1, 1999 letter, Musgrave told Mayer, "I am still, as stated numerous times, uncomfortable with binding arbitration. I do not want binding arbitration. . . . [¶] . . . Friday September 24 you called me and asked me for my decision. I told you it was mediation. You told me that was not an option. I told you I needed the weekend to think. Monday Sept. 27 you told me I had to make a decision. I called you back around noon to tell you that I felt as if I was backed into a corner and reluctantly agreed to binding arbitration. Less than 24 hours later I called your office and left a message that I change [*sic*] my mind. I did not want binding arbitration. [¶] . . . [¶] Marvin, I am convinced that you no longer want this case and am not sure that you are acting in my companies [*sic*] best interest. I have almost $40,000.00 in legal fees on a case that you tell me is worth about or less than [$]80,000[.] At almost 30 days prior to our trial date you write me a letter telling me you can no longer represent me and that you have tentatively agreed to binding arbitration with out [*sic*] my knowledge or consent. [¶] . . . My dilemma is that in order to get another attorney up to speed I will incur additional fees to again have this case reviewed not to mention my time which will again have to be spent with the attorney."

Baruch & Wolder (Baruch) to act on behalf of CPI. The other was from Baruch, who said Musgrave "gave her oral consent to Mr. Mayer for binding arbitration on September 27, 1999, but she revoked that consent the next day on September 28, 1999. Mr. Mayer should have communicated this revocation to you. [¶] . . . [¶] Mr. Mayer indicates he has a conflict of interest and may be seeking an order permitting him to withdraw as the attorney of record in this case." Accordingly, Baruch demanded the stipulation either not be sent to the court, or if already sent, be retrieved before the court authorized binding arbitration, because Musgrave wanted to have her October 25, 1999 jury trial.

Also on October 7, 1999, the court clerk notified Seyfarth that "the Court had not entered the Order attached to the stipulation for binding arbitration because the 'actual parties' . . . had not signed the stipulation."

Impco filed a motion to compel arbitration. The case was ordered into binding arbitration. Baruch then filed a motion for reconsideration on behalf of CPI. CPI presented uncontradicted evidence that Musgrave withdrew her consent to binding arbitration early on September 28, 1999. The trial court granted CPI's motion for reconsideration. The prior order that the case was to proceed to binding arbitration was vacated. Impco filed a timely notice of appeal.

## II

### DISCUSSION

*Appealability*

■ A party may appeal from an order denying a petition to compel arbitration. (Code Civ. Proc., § 1294, subd. (a).) When the trial court vacated its prior order compelling arbitration, it, in effect, denied a petition to compel arbitration.

*Standard of Review*

■ "We apply general California contract law to determine whether the parties formed a valid agreement to arbitrate. [Citations.]" (*Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83, 89 [80 Cal.Rptr.2d 147].) When "there is no evidence

extrinsic to the contract or no conflict in the extrinsic evidence or the conflicting evidence is entirely written, a reviewing court is not bound by the finding of the trial court, but instead subjects the contract to independent review. [Citation.]" (*Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1663 [18 Cal.Rptr.2d 563].) In this case the facts are not in dispute, so we review de novo the trial court's determination of the validity of the agreement to arbitrate.

*Authority to Consent to Binding Arbitration*

■ "The authority . . . conferred upon an attorney is in part apparent authority . . . to do that which attorneys are normally authorized to do in the course of litigation . . . and in part actual authority . . ." either express or implied. (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403-404 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].) "Considerations of procedural efficiency require, for example, that in the course of a trial there be but one captain per ship." (*Id* at p. 404.) But an attorney is not authorized merely by virtue of being retained for litigation to " 'impair the client's substantial rights or the cause of action itself.' " (*Ibid.*)

The California Supreme Court in *Blanton v. Womancare, Inc., supra,* 38 Cal.3d 396, was faced with deciding whether the client was bound by her attorney's signature. As in this case, Blanton's attorney also stipulated to binding arbitration. The effect was no further judicial review of the case. Unlike this case, Blanton had not given her oral consent to the stipulation. As soon as Blanton learned about it, she objected and fired her attorney. The Supreme Court noted it is "accepted practice within the legal profession . . . for attorneys to rely upon representations made by other attorneys with respect to the scope of their authority." (*Id.* at p. 406.) However, it concluded the attorney there lacked the apparent authority to waive the client's substantial rights by entering into binding arbitration without the client's consent.

The Supreme Court also observed, " '[A]bsent express authority, it is established that an attorney does not have implied plenary authority to enter into contracts on behalf of his client. [Citation.]' [Citation.]" (*Blanton v. Womancare, Inc., supra,* 38 Cal.3d at p. 407.) This is the key distinction. ■ In the case before us, Musgrave expressly authorized Mayer to enter into binding arbitration.

The case of *Sanker v. Brown* (1985) 167 Cal.App.3d 1144 [213 Cal.Rptr. 768], is equally distinguishable. There, the court did not find the client had ratified the attorney's agreement to binding arbitration, even *after* the arbitration was completed and the client did not like the result. The client never

authorized the attorney to stipulate to binding arbitration, and at the time the arbitration proceedings took place, the client believed the resulting decision would be nonbinding. The *Sanker* court held that *Blanton v. Womancare, Inc., supra,* 38 Cal.3d 396 required the agreement for binding arbitration to be thrown out because, just as in *Blanton,* the attorney in *Sanker* had no apparent authority to bind the client. *Sanker,* like *Blanton,* did not present the situation where the client had expressly authorized the attorney to stipulate to binding arbitration. In the case before us, on the other hand, the client had expressly authorized the attorney to stipulate.

Impco argues it should prevail because Musgrave's withdrawal of Mayer's authority came after an agreement to arbitrate had been made, and ordinary contract principles apply. "A written agreement to submit to arbitration an existing controversy . . . is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) An offer is properly revoked upon the occurrence of one of four events: (1) the communication of revocation to the other party before acceptance is communicated; (2) the lapse of time for acceptance; (3) the failure of the acceptor to fulfill a condition precedent to acceptance; or (4) the death or insanity of the proposer. (Civ. Code, § 1587.) Since Impco immediately responded, there were no unfulfilled conditions and there is no death or insanity involved, we need only decide whether the revocation was communicated before notice of acceptance was received.

In fact, no attempt to communicate a revocation of the offer to submit the matter to binding arbitration was made until Baruch wrote Impco on October 7. That was a week after Impco had accepted by complying with the directions on Mayer's cover letter accompanying the offer: "You may file it directly with the court or return it to my office for filing."

When CPI's attorney made the offer to submit the matter to binding arbitration, he had the authority of his client. Impco's attorney followed the accepted practice within the legal profession of relying upon the representation of CPI's attorney regarding his authority to enter into the stipulation. When Impco's attorney accepted the offer, he was unaware CPI had withdrawn its consent. What they had was more than a failure to communicate. They also had a contract.

CPI insists this cannot be so, because Musgrave had communicated her revocation of consent to Mayer before Impco accepted the offer. CPI neither articulates any legal theory underlying this argument nor cites any legal

authority supporting it. As best we can discern, CPI's position is that the communication with its own attorney constituted delivery to Impco of notice of revocation of the offer to stipulate to binding arbitration. If this is CPI's argument, it fails.

"As a general proposition the attorney-client relationship, insofar as it concerns the authority of the attorney to bind his client by agreement or stipulation, is governed by the principles of agency. [Citation.] Hence, 'the client as principal is bound by the acts of the attorney-agent within the scope of his [or her] actual authority (express or implied) . . . .' [Citations.]" (*Blanton v. Womancare, Inc., supra,* 38 Cal.3d at p. 403.) Here, Mayer had express authority to sign a stipulation and forward it to Impco's attorney. The fact Musgrave later communicated a change of heart to Mayer is not determinative. Rather, when a principal communicates notice of revocation to his or her agent, but the agent fails to communicate the notice to the offeree, the principal is bound upon the offeree's acceptance, even though the agent disregarded the principal's express instructions. (*Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 619-623 [2 Cal.Rptr.2d 288]; see also Civ. Code, § 2356, subd. (b).) CPI does not "attempt to explain how notice to one's own agent who is not also the agent of the offeree and who does not communicate the notice to its intended recipient could ever suffice" as communication of notice of revocation of the offer under Civil Code section 1587. (*Ersa Grae Corp. v. Fluor Corp., supra,* 1 Cal.App.4th at p. 623.)

*Motion for Sanctions*

Impco has filed a somewhat puzzling motion for sanctions. Impco observes that CPI, in a curious sort of advocacy, filed a respondent's brief "utterly (and literally) devoid of supporting authority or argument." Because CPI provided only a recitation of facts, Impco contends CPI's brief was frivolous. Impco seeks $12,452.50, the amount of its attorney fees on appeal, in sanctions. While California Rules of Court, rule 26(a), to which Impco cites, does permit the court to impose penalties on "any party" to the appeal who has been guilty of any unreasonable infraction of the rules governing appeals, we do not construe the rule as supporting the sanctions request in this case. Impco filed the appeal, not CPI. That Impco views the respondent's brief as flimsy means Impco's burden should be easier. Impco's citation to Code of Civil Procedure section 907, concerning frivolous appeals, is equally unavailing.

## III

### DISPOSITION

The trial judge erred in vacating the order compelling binding arbitration. Accordingly, we reverse. Impco's motion for sanctions is denied. Impco shall have its costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.