Filed 7/27/21  Lerner v. Masterson CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KIMBERLY LERNER et al., | B297323 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC680797) |
| v. | |
| LISA M. MASTERSON, M.D. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Reversed, with directions.

Humphrey + Law, J. Scott Humphrey, for Plaintiffs and Appellants Kimberly Lerner and Jacob Lerner.

Watkins & Letofsky, Daniel R. Watkins, for Plaintiff and Appellant Bruce Lerner.

La Follette, Johnson, DeHaas, Fesler & Ames, Louis H. DeHass, David J. Ozeran, for Defendant and Respondent Lisa M. Masterson, M.D.

Taylor DeMacro, N. Denise Taylor, Julianne M. DeMarco, for Defendant and Respondent Clifford J. Bochner, M.D.

_____

Plaintiffs and appellants Kimberly Lerner, individually and as guardian ad litem for minor Jacob Lerner, and Bruce Lerner appeal from a summary judgment in favor of defendants and respondents Lisa M. Masterson, M.D., and Clifford J. Bochner, M.D. (collectively referred to as the doctors), in this action for breach of arbitration agreements.[1]  Arbitration between the parties commenced in 2008 based on a stipulated order to arbitrate in a prior medical malpractice action.  After the parties failed to appoint a successor arbitrator, the doctors refused to participate further in the arbitration.  The Lerners filed the current action for specific performance of the agreement to arbitrate, then filed a petition in this action to appoint an arbitrator.  The trial court denied the petition to appoint an arbitrator on the ground that the Lerners had unreasonably delayed the arbitration proceeding.  The court later granted summary judgment of the action on the same ground.

On appeal, the Lerners contend the trial court was required to appoint an arbitrator under Code of Civil Procedure section 1281.6, and could not grant summary judgment based on a factual finding that the Lerners had engaged in unreasonable

_____

[1] Because several parties share the last name Lerner, they will be referred to individually by their first names for ease of reference.  No disrespect is intended.

2

delay.[2]  We conclude that the order denying the petition to appoint an arbitrator was not directly appealable, but is properly reviewed in connection with the appeal from the judgment. Under section 1281.6, the trial court was required to assist with the appointment of an arbitrator.  Section 1281.6 did not permit the trial court to find that the petitioner had waived the right to have the court appoint an arbitrator through unreasonable delay in the arbitration proceedings.  Whether there has been unreasonable delay in the arbitration proceedings here is an issue to be brought before the arbitrator.  We reverse the judgment with directions.

### FACTUAL AND PROCEDURAL HISTORY

#### *Lerner I*

In September 2006, Kimberly began receiving care for her pregnancy from Masterson, who is a specialist in obstetrics and gynecology, and Bochner, who is a specialist in perinatology. Kimberly signed arbitration agreements with each doctor containing identical terms.  Article 1 of the agreement stated that any dispute as to medical malpractice would be determined by submission to arbitration as provided by California law.  Article 2 stated that the parties intended the agreement to bind all parties whose claims may arise out of the treatment or service provided by the physician, including spouses or heirs.  Article 3 provided for the selection of arbitrators as follows in pertinent part:  "Each party shall select an arbitrator (party arbitrator) within thirty

---

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

3

days and a third arbitrator (neutral arbitrator) shall be selected by the arbitrators appointed by the parties within thirty days of a demand for a neutral arbitrator by either party." Article 4 provided in pertinent part, "A claim shall be waived and forever barred if (1) on the date notice [of the claim] is received, the claim, if asserted in a civil action, would be barred by the applicable California statute of limitations, or (2) the claimant fails to pursue the arbitration claim in accordance with the procedures prescribed herein with reasonable diligence."

During an ultrasound in February 2007, when the fetus was already viable, Bochner detected for the first time that the fetus had extremely serious physical defects. Jacob was born on March 23, 2007, with severe physical defects requiring multiple surgeries, including a lack of a connection between his esophagus and stomach, an extra pouch on his trachea, a missing kidney, an arachnoid cyst on his brain, scoliosis, and the lack of an articulable thumb on his left hand. Most of these conditions are symptoms of VATER or VACTERL association, which is a combination of certain birth defects that may be diagnosed during fetal prenatal ultrasounds.

In May 2008, the Lerners brought an action for wrongful life and wrongful birth against several defendants, including the doctors, Cedars-Sinai Medical Center, and another individual physician (*Lerner, et al. v. Masterson, et al.* (Super. Ct. L.A. County, 2008, No. BC390280 (*Lerner I*)). The Lerners alleged that Jacob suffered serious physical defects which the defendants failed to detect prior to viability. The matter was assigned to Judge William F. Fahey.

In the fall of 2008, after the arbitration agreements with the doctors were brought to their attention, the Lerners

4

stipulated to binding arbitration. The parties stipulated "to stay further proceedings in this action as to the arbitrating parties only, until binding contractual arbitration of the claims and controversies alleged herein has been completed in accordance with the procedures for arbitration as set forth in the contractual agreements between [Kimberly] and [the doctors and another physician]."

In December 2008, the trial court ordered the action stayed as to the arbitrating parties only, pursuant to section 1280 et seq., pending binding arbitration in accordance with the parties' contract. The trial court's order also stated: "The court retains jurisdiction to handle subsequent petitions filed by any party pursuant to Title 9, California Code of Civil Procedure §§1280-1294.2, including petitions to correct, confirm, or vacate an arbitration award, and a petition to appoint a neutral arbitrator should the method set forth in the agreement fail."

## Arbitration Proceedings

The Lerners selected Richard Thomas as their party arbitrator. The defendants selected P. Theodore Hammond. The parties agreed to appointment of Hon. Alan B. Haber (Ret.) as the neutral arbitrator. Kimberly was deposed in March 2009; Bruce was deposed in April 2009. Masterson filed a motion for summary judgment in the arbitration proceedings in April 2009.

The trial court held a "Status Conference re: Binding Arbitration" in *Lerner I* on June 24, 2009. There was no appearance by the Lerners. Counsel for the defense advised the court on the status of arbitration. The trial court dismissed the

5

case without prejudice and ordered the defendant to give notice. The appellate record does not contain a notice of the ruling.

At an arbitration conference in July 2009, the Lerners' attorney Scott Humphrey stated that he needed to depose the doctors to oppose Masterson's motion for summary judgment. He represented that there was a good possibility Masterson would be dismissed following the deposition, causing her motion for summary judgment to be unnecessary. The motion for summary judgment was taken off calendar in the arbitration pending the depositions.

Further discovery was completed. Bochner's deposition was completed in October 2009. An independent medical evaluation (IME) of Jacob was conducted in November 2009, when he was two and a half years old. Masterson's deposition was completed in May 2010. The Lerners propounded form interrogatories and requests for the production of documents from Bochner, but did not serve any discovery requests on Masterson.

More than a year after the completion of Masterson's deposition, in August 2011, the arbitration organization informed the parties that arbitrator Haber was withdrawing from the matter because he was no longer handling arbitrations. The parties could not agree on a neutral arbitrator to replace arbitrator Haber.

A year later, in August 2012, the Lerners filed a petition in the trial court to have the court appoint a neutral arbitrator. The petition was taken off calendar, and the parties agreed to the appointment of Jay Horton in November 2012.[3] Arbitrator

_____

[3] The reason for taking the petition off calendar is not clear from the appellate record. In the Lerners' opening brief on

6

Horton was employed by Judicate West. He ruled on several motions and conducted hearings prior to the arbitration date.

In February 2013, the parties and the arbitrators agreed to schedule the arbitration for the following year in February 2014. The arbitration was expected to require a minimum of 7 or 8 days for testimony and argument. The next month, in March 2013, the doctors' party arbitrator Hammond died. The doctors selected James Nichols in his place.

In November 2013, five years after the parties had agreed to proceed in arbitration, Bochner's attorney Denise Taylor realized that she could not attend the scheduled arbitration dates. An organization of which she was the president was holding an annual seminar on dates in February 2014 that conflicted with the arbitration. She informed the arbitrators and the Lerners' counsel that she was not available for the scheduled dates. In addition, the doctors sought to conduct a second IME to update the prior discovery. Although five years had passed, the doctors did not bring a motion to dismiss the arbitration on the ground that the Lerners waived their claims by failing to pursue them diligently.

The Lerners cooperated with the doctors' request to reschedule the arbitration dates and conduct an updated IME. Based on the availability of the arbitrators, the parties, and the

appeal, they state that in the process of exchanging pleadings listing acceptable arbitrators, they agreed to select arbitrator Horton, so the petition became moot. A trial court order in the current action states that the 2012 petition was taken off calendar because the underlying case had been dismissed and the Lerners did not appeal. In the respondents' brief, the doctors merely state that after the Lerners filed the 2012 petition, the parties agreed to select arbitrator Horton.

7

expert witnesses, the arbitration was continued for a year to March 2015. The doctors scheduled a second IME to be performed on January 16, 2014.

On January 10, 2014, the Lerners cancelled the second IME. When the parties could not agree on a new date for the IME, Bochner's attorney contacted the neutral arbitrator. A conference call was held with the arbitrator in May 2014. The arbitrator ordered the Lerners to submit Jacob for the second IME by July 1, 2014. If Jacob failed to submit to the second IME, the arbitrator would entertain a motion for relief by the doctors for reimbursement of the costs of coordinating and scheduling the defense experts.

The doctors scheduled an IME to be performed on January 5 and 6, 2015. It is not clear from the record whether this is the same IME that the arbitrator ordered to be completed by July 1, 2014, or a different IME. The doctors obtained an order compelling the examination on the scheduled dates. The order advised that the parents were required to attend and participate as necessary, including providing data from a prior examination conducted by the Lerners' expert, but the parents would not be permitted in the examination room while the standardized evaluation was performed.

Jacob could not attend the evaluation on the scheduled dates due to illness and the examination was rescheduled for later dates in January 2015. According to the declaration of the expert who conducted the examination, Bruce refused to allow any testing outside of his presence. The parents refused to participate in the clinical interview or answer questions about Jacob, such as questions about the medications that he was taking, but agreed to take the questionnaire with them and mail

it back.  Bruce did not assist his son with the tests, but his presence as an observer in the room was a distraction.

Bochner's counsel described the events to the neutral arbitrator in a conference call on January 23, 2015.  Attorney Humphrey stated that he would be filing a motion to withdraw as counsel for Bruce.  Humphrey requested a stay of the arbitration to allow for this.  The arbitration panel vacated the March 2015 arbitration dates.

The Lerners filed a second action in the trial court on March 23, 2015, alleging wrongful life, but the complaint was not served on any defendant (*Lerner II*).  In January 2016, a year after Humphrey notified the neutral arbitrator that he would be withdrawing as Bruce's counsel, attorney Dan Watkins substituted into the arbitration matter on behalf of Bruce.  The arbitration panel ruled on multiple motions, including a motion for summary adjudication, and the arbitration was rescheduled to commence on September 19, 2016.

The parties filed arbitration briefs and were present for arbitration to begin on September 19, 2016.  Although eight years had passed since the arbitration commenced, there is no evidence in the record that the doctors sought to dismiss the arbitration for failure to pursue claims with reasonable diligence.

Prior to opening statements, arbitrator Horton disclosed to the parties' counsel that he had a close family member born with the some of the factors associated with Jacob's medical condition. There had been no issue in his family member's circumstance about whether the condition should have been diagnosed prior to birth.  The defects required surgery within 12 hours of birth, but after extensive treatment, the child had thrived.  Until he read the specific term VATER or VACTERL in the arbitration brief,

9

arbitrator Horton had not realized that Jacob's physical conditions were associated with the issues that arbitrator Horton's family member had, because the complications and the surgeries were different. Although he did not feel it would affect his judgment and was not recusing himself, he wanted to make a complete disclosure and give the parties an opportunity to request recusal. The doctors indicated that they wanted to proceed, but the Lerners requested recusal. Horton ordered that there would be no further discovery and the Lerners must present a list of acceptable neutral arbitrators by September 23, 2016.

On September 23, 2016, Humphrey sent an email proposing five arbitrators to the doctors' counsel that were acceptable to the Lerners, and copied Watkins on the message. The five arbitrators listed included Hon. Patricia M. Schnegg and Hon. Michael Latin (Ret.). That same day, the trial court dismissed *Lerner II* for failure to appear and failure to prosecute.

Bochner's attorney Taylor sent an email to Humphrey and Watkins dated September 30, 2016, confirming an earlier telephone conversation. She had been willing to accept arbitrator Schnegg, but the arbitration organization had advised Taylor that Schnegg was no longer accepting arbitrations. Taylor proposed two additional names and the Lerners' counsel agreed to consider Joe Thielen. Taylor asked the Lerners' counsel to let her know if Thielen was acceptable. If not, Taylor would consider someone else from the Lerners' list or suggest additional names. She added, "Our carrier and clients would very much like to get the arbitration back on calendar for some time in 2017 . . . ." Bochner's counsel sent another email a month later asking if Thielen was acceptable, so as to begin scheduling.

On November 14, 2016, the Lerners rejected arbitrator Thielen and suggested names of two additional arbitrators to consider. Bochner's counsel discussed the arbitrators proposed by the Lerners with her clients and notified Humphrey on November 21, 2016, that the doctors had agreed to select arbitrator Latin from the original list provided by the Lerners. Humphrey responded by email that day, requesting Bochner's counsel wait a few days to notify arbitrator Latin, because Bruce was getting separate counsel again and Humphrey could not speak for Bruce.

On November 26, 2016, Bochner's counsel sent an email to Humphrey asking if she could contact arbitrator Latin the following week to retain him. She also asked for information as to Bruce's new counsel, and added, "We cannot wait for another several months for him to find someone like last time. We need to get this case back on schedule for arbitration."

On November 30, 2016, and again on December 16, 2016, Watkins notified Taylor by email that he was withdrawing as Bruce's counsel and promised to send documentation shortly. Bruce tried to call Taylor directly on December 13, 2016, leaving his phone number for a return call. Taylor was uncomfortable communicating directly with a party who continued to be represented by counsel of record, so she informed Watkins and Humphrey of the call and requested a notice of withdrawal or substitution of attorney. Taylor made multiple requests by telephone and email for substitution of new counsel or selection of a new arbitrator without receiving a response.

On May 30, 2017, Bochner filed a petition in *Lerner I* to appoint a neutral arbitrator pursuant to section 1281.6. The petition alleged that the doctors had demanded participation

11

from the Lerners to select a new arbitrator as provided in the parties' arbitration agreement, but the Lerners had failed to respond so that a new arbitrator could be selected. Masterson joined in the petition. Humphrey filed a response on behalf of Kimberly and Jacob, stating that they did not oppose the court's intervention to select a neutral arbitrator. No response was filed on behalf of Bruce.

On June 21, 2017, the trial court denied the petition on the ground that the court lacked jurisdiction to rule on the matter, because the case had been dismissed and there was no action pending before the court. The parties did not seek reconsideration of the ruling, seek to set aside the dismissal of the case, or appeal the ruling. The doctors refused to participate further in the arbitration proceeding.

### *Lerner III*

Four months later, on October 31, 2017, the Lerners filed the current matter against the doctors and Judicate West seeking specific performance of the arbitration agreements and the stipulation. Humphrey signed the complaint on behalf of Jacob and Kimberly, while Watkins signed the complaint on behalf of Bruce.[4] *Lerner III* was related to *Lerner I* and transferred to Judge Fahey on March 6, 2018.

---

[4] On May 16, 2019, the Lerners filed a petition for appointment of a neutral arbitrator, but the petition was defective because it was not verified, not supported by a declaration, and failed to provide a hearing date. The petition was not heard.

12

On May 31, 2018, the Lerners filed an amended breach of contract complaint seeking specific performance and injunctive relief against the doctors only. They alleged that after arbitrator Horton's recusal, the parties and their counsel were unable to agree on an appropriate neutral arbitrator, despite several attempts over the course of six months. The Lerners sought assistance from arbitrator Horton and Judicate West to select a neutral arbitrator, but they refused to assist. When Bochner filed a petition to appoint a neutral arbitrator in *Lerner I* without filing a motion to reopen the action, although the parties submitted names of arbitrators, the trial court refused to rule on the petition. The court concluded that it lacked jurisdiction because no action was currently pending before the court. After the court's ruling, the doctors refused to select a neutral or participate in the arbitration process. The refusal to participate further in the arbitration was a breach of the terms of the arbitration agreements, as well as a breach of the terms of the stipulation to submit the matter to binding contractual arbitration until completed. The Lerners performed all of the conditions required of them under the arbitration agreements and the stipulation, and they were ready and able to participate in the arbitration process to select a neutral arbitrator. The complaint demanded specific performance of the parties' agreements by requiring the doctors to participate in the selection of a neutral arbitrator or that the trial court simply select a neutral arbitrator. They also requested an injunction mandating that the doctors participate in the selection of a neutral arbitrator. They attached copies of the physician-patient arbitration agreements that Kimberly had signed with the doctors.

13

On June 27, 2018, the Lerners filed a petition in *Lerner III* for appointment of a neutral arbitrator. Masterson opposed the petition on the ground that it was not the proper forum. She argued that the Lerners' remedy had to be obtained in *Lerner I*, where the issue of appointment had been fully and fairly litigated, and had not been appealed. In addition, the action was barred by the statute of limitations, and there was no sufficient evidence to support granting the petition. Bochner opposed the petition on the ground that the Lerners had unreasonably delayed in participating in the selection of a neutral arbitrator, an eight-year delay in the prosecution of the arbitration based on a court action filed over ten years earlier was unreasonable, and the petition was an improper motion for reconsideration of the June 21, 2017 order denying appointment of a neutral arbitrator in *Lerner I*. No reply brief was filed.

On July 25, 2018, a hearing was held on the petition for appointment of a neutral arbitrator. The trial court took the matter under submission and denied the petition on July 27, 2018. The court found there was no explanation for the Lerners' multiple delays, including their failure to prosecute *Lerner II*, their delay in filing the third lawsuit, a four month delay in serving the third lawsuit, and an eight month delay in properly noticing a hearing on the petition to appoint an arbitrator. The court found the Lerners had made no effort to bring the matter to arbitration in the three years prior to arbitrator Haber's withdrawal or the four years following his replacement with arbitrator Horton. In the absence of a showing of reasonable

14

diligence to bring the matter to arbitration, the trial court denied the petition.[5]

## Motion for Summary Judgment in *Lerner III*

On November 8, 2018, the doctors filed a motion for summary judgment on the ground that they did not breach the arbitration agreement after Horton's recusal. The doctors argued that they fulfilled their duty under the arbitration agreement by following the procedures required to select a neutral arbitrator and the Lerners had unreasonably delayed the proceeding. In addition, the lawsuit was an untimely and inappropriate motion for reconsideration of the 2017 denial of the petition to appoint a neutral arbitrator. The action based on the stipulation to arbitrate was also barred by the statute of limitations. The doctors submitted Bochner's counsel's declaration in support of the motion for summary judgment. They also submitted copies of emails, pleadings, discovery, a portion of the reporter's transcript from the arbitration, and trial court orders to establish the facts above.

The Lerners filed an opposition to the motion for summary judgment. They argued that the doctors, after participating in the arbitration process for many years, and after delays caused by the arbitrators and all of the parties involved, had refused to choose another arbitrator or participate further in the arbitration

---

[5] The doctors also filed a demurrer to the wrongful life cause of action which was heard and ruled on by the trial court at the same time as the petition to appoint an arbitrator. The trial court overruled the demurrer on the ground that factual issues existed which were not suitable for resolution on demurrer.

process after arbitrator Horton's recusal. The Lerners' performance was not a condition precedent to performance by the doctors, but the Lerners had performed under the contract. Humphrey had sought assistance from arbitrator Horton and Judicate West, which had been refused. Following the trial court's denial of the doctors' petition in *Lerner I*, the doctors refused to select a new neutral arbitrator. *Lerner III* was based on the doctors' refusal to select a new arbitrator after the trial court's denial of the petition to appoint an arbitrator. The doctors lack of performance was a material breach of their obligations under the arbitration agreements. The Lerners were not seeking reconsideration of the ruling on the petition, but rather, a remedy based on the doctors' inaction. The complaint was not time barred, because the breach did not occur until after the trial court denied the petition to appoint an arbitrator in *Lerner I*.

The Lerners submitted Humphrey's declaration in opposition to the motion for summary judgment to establish the following. Jacob's condition required more than 100 surgeries, so the number of physicians and medical experts required to evaluate his medical condition and his potential damages had continually shifted and required significant time and expense to coordinate. Hearings required significant advance time for preparation due to the schedules of three arbitrators and several counsel. The Lerners provided names of five neutral arbitrators as ordered by arbitrator Horton, but the doctors did not accept any of them and proposed two or three additional names, which the Lerners did not accept. The Lerners proposed a second set of five completely different names. Taylor eventually told Humphrey that the doctors would agree to arbitrator Latin from the original list. Latin continued to be acceptable to Kimberly

16

and Jacob, but at that point, Bruce wished to retain separate counsel before selecting a neutral arbitrator.

Humphrey made several attempts to have arbitrator Horton or the arbitration organization facilitate the selection of a new arbitrator, but they refused. Humphrey noted that the doctors brought a petition to compel arbitration in the trial court without reopening the underlying case or opening any case. In anticipation of the hearing date, Humphrey called Bochner's counsel concerning the need to reopen the original underlying case, but Bochner's counsel did not believe it would be necessary. The Lerners did not bring the petition in *Lerner I*, but had been in favor of the trial court aiding the selection of a new neutral arbitrator. The trial court determined it did not have jurisdiction, because the case had not been reopened.

Following the trial court's ruling denying the petition, the doctors refused to select a new neutral. A few days after the hearing, Humphrey called Taylor to resume discussion regarding selection of a new arbitrator. Taylor stated that she would check with the client, but in her view, the matter was concluded and they had no further obligation to arbitrate. On at least two subsequent occasions, Taylor specifically represented that the doctors refused to select another arbitrator and were "done" with the matter.

The doctors filed a reply arguing that there was no triable issue of fact as to breach of contract. The doctors went beyond the legal requirements to facilitate selection of a neutral arbitrator, but the Lerners engaged in delays and refused to meaningfully participate. *Lerner III* was an impermissible motion for reconsideration of the denial of the petition in the prior action, and the action was time barred as a result of the

17

Lerners' extraordinary delay. The parties had agreed to binding arbitration in a stipulation filed more than nine years earlier, on December 22, 2008. Article 4 of the arbitration agreements provided that a claim was waived and forever barred if the claimant failed to pursue it in accordance with the procedures proscribed with reasonable diligence.

A hearing was held on February 22, 2019. Humphrey explained that the Lerners did not intend to prove that the doctors unnecessarily delayed the process during the course of the arbitration proceedings. There was extensive discussion as to whether the five-year rule requiring diligent prosecution of an action applied to the arbitration. The doctors argued that no breach of the arbitration agreements had been identified and the Lerners had not complied with the agreements by acting with reasonable diligence.

On February 28, 2019, the trial court entered an order granting the motion for summary judgment and dismissing the case with prejudice. The court found that the separate statement of facts did not reveal a material factual dispute between the parties. The Lerners provided no evidence that the doctors breached the arbitration agreement. Instead, the record in *Lerner I* showed there was a 10-year delay in bringing the matter to arbitration primarily due to the actions of two arbitrators and delays by the Lerners. There was no evidence that the Lerners requested an arbitration date, or the doctors refused one, before arbitrator Haber retired. When the parties initially could not agree on a new arbitrator, the Lerners' petition to the trial court to select an arbitrator was taken off calendar because the underlying case had been dismissed. The Lerners did not seek to set aside the dismissal or appeal the ruling. After arbitrator

18

Horton made a personal disclosure, it was the Lerners who requested his recusal. The doctors agreed to an arbitrator proposed by the Lerners, but Humphrey requested another delay because Bruce was seeking new counsel. Ultimately, Bruce did not hire new counsel and attorney Watkins continued to represent him.

There is no evidence that the Lerners took action to move the case forward in the next six months. In May 2017, it was the doctors who petitioned the trial court in *Lerner I* for appointment of a neutral arbitrator, which was denied for lack of jurisdiction. Although Humphrey believed the underlying case had to be reopened first, the Lerners did nothing to reopen the case and did not appeal the ruling on the petition. After the Lerners filed *Lerner III*, they delayed serving the doctors and waited several months before filing a motion requesting the court appoint an arbitrator, which the court denied. The record does not show any breach by the doctors, and the separate statements showed no material factual dispute between the parties. The excessive delays in bringing the matter to arbitration warranted denial of the requested relief. The arbitration process had not been expeditious, through no fault of the defendants. The motion for summary judgment was granted and a judgment of dismissal of *Lerner III* was entered.

On March 5, 2019, the doctors provided notice of entry of judgment. On April 18, 2019, Watkins filed a notice of appeal on behalf of Bruce from the judgment, although the notice erroneously stated the judgment was entered March 5, 2019. On May 1, 2019, Humphrey filed a timely notice of appeal on behalf of Kimberly and Jacob from the judgment entered February 28, 2019.

## DISCUSSION

### Statutory Scheme and Procedural Posture

The California Arbitration Act (CAA) (§ 1280 et seq.) embodies a strong public policy supporting private arbitration as a relatively quick and inexpensive method to resolve disputes. (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 72.) A written agreement to submit disputes to arbitration is a valid, enforceable, and irrevocable contract, except on the grounds that apply to the revocation of any contract. (§ 1281.) Proceedings under the CAA to assist contractual arbitration are commenced by filing a petition (§ 1290) and determined under the summary procedures that apply to motions (§ 1290.2).

### A. Proceedings to Initiate Arbitration

No judicial proceedings are required to commence arbitration between willing participants. (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795, fn. 3 (*Brock*).)

When a party refuses to arbitrate, the party seeking to arbitrate may file a petition to compel arbitration with the court alleging that a party to a written arbitration agreement refuses to arbitrate. (§ 1281.2.) If the court finds an agreement to arbitrate the controversy exists, the court must order the parties to arbitrate, unless the court finds: (1) the petitioner waived the right to compel arbitration, (2) there are grounds for rescission, (3) there is a pending proceeding with a third party and rulings

20

could conflict, or (4) the petitioner is a financial institution under certain circumstances.  (§ 1281.2.)

When there is no pending action or proceeding involving the parties' dispute, the party seeking to compel arbitration can simply file a petition to compel arbitration under section 1281.2 as an independent lawsuit.  (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 521, fn. 4 (*Frog Creek*).)  A petition to compel arbitration is essentially a suit in equity to compel specific performance of the parties' arbitration agreement.  (*Brock*, *supra*, 10 Cal.App.4th at p. 1795; *Frog Creek*, *supra*, 206 Cal.App.4th at p. 532.)

If there is a pending action or proceeding involving the dispute, the petition for an order to arbitrate must be filed within the action or proceeding.  (§ 1292.4.)  A petition to compel arbitration that is filed within a pending lawsuit is considered part of the legal action, not a separate, distinct proceeding.  (*Frog Creek*, *supra*, 206 Cal.App.4th at pp. 515, 537.)  In addition, if the court orders arbitration in a pending action or proceeding, upon the motion of a party, the court must stay the action or proceeding until the arbitration is held or an earlier time specified by the court.  (§§ 1281.4, 1292.8; *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1096 (*Gaines*) [a party seeking to enforce contractual arbitration is entitled to a stay of pending legal actions].)

An action at law and a contractual arbitration proceeding based on the same controversy are independent remedies.  (*Brock*, *supra*, 10 Cal.App.4th at pp. 1792–1793.)  Once the court grants a petition to compel arbitration in a pending action and stays the action at law, the court has limited jurisdiction over the two separate proceedings.  (*Id.* at p. 1796.)  "[T]he action at law

sits in the twilight zone of abatement with the trial court retaining merely a vestigial jurisdiction over matters submitted to arbitration.  This vestigial jurisdiction over the action at law consists solely of making the determination, upon conclusion of the arbitration proceedings, of whether there was an award on the merits (in which case the action at law should be dismissed because of the res judicata effects of the arbitration award [citations]) or not (at which point the action at law may resume to determine the rights of the parties).  [Citations.]" (*Ibid*.)

The court also has continuing jurisdiction to provide limited judicial assistance with the arbitration:  "After a petition has been filed under [the CAA], the court in which such petition was filed retains jurisdiction to determine any subsequent petition involving the same agreement to arbitrate and the same controversy, and any such subsequent petition shall be filed in the same proceeding." (§ 1292.6.)

### B.  Jurisdiction after Dismissal of *Lerner I*

Although the Lerners originally filed an action in the trial court for medical malpractice, the doctors did not have to file a petition to compel arbitration in that case because the Lerners willingly agreed to arbitrate once the arbitration agreements were brought to their attention.  The trial court ordered the proceedings in *Lerner I* stayed pending arbitration, and the parties commenced arbitration.  The order based on the parties' stipulation was effectively an order staying the legal proceedings and ordering the parties to arbitration.  (Cf. *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 279 [stipulation designed to avoid the trouble and expense of a motion to compel

22

discovery deemed equivalent to a court order compelling discovery], overruled on other grounds in *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273.)

The trial court's authority to dismiss the entire action without prejudice one year later, while the action was stayed and arbitration was pending, is not clear from the record, statutes, or case law, but the order dismissing the action without prejudice was not appealed.  The order dismissing *Lerner I* did not terminate the arbitration proceeding, however, which continued as a separate, independent proceeding.  (*Brock*, *supra*, 10 Cal.App.4th at p. 1793 [dismissal of the action at law does not terminate the arbitration proceeding].)

Pursuant to the court's order to arbitrate, the court retained jurisdiction to determine any subsequent petition under the CAA filed within the action.  (See *Dodd v. Ford* (1984) 153 Cal.App.3d 426, 431–432 (*Dodd*).)  When the doctors filed a petition to appoint an arbitrator within the action, however, the court determined that it lacked jurisdiction to rule on the petition because *Lerner I* had been dismissed and no action was pending. The court's ruling that it did not have jurisdiction to rule on the petition within *Lerner I* was not appealed and became final.

We note that the parties' written stipulation to stay the legal proceedings in order to pursue arbitration was also legally enforceable.  (*Porreco v. Red Top RV Center* (1989) 216 Cal.App.3d 113, 130–132 (*Porreco*).)  Dismissal of the action at law did not bar independent enforcement of the stipulation to stay proceedings in the malpractice action and pursue arbitration.  (See *Dodd*, *supra*, 153 Cal.App.3d at pp. 431–432.)

### C. Remedies for Delay and Failure to Prosecute Arbitration

Remedies for delay are available in an arbitration proceeding and through limited proceedings in court under the CAA, depending on the circumstances of the case.

#### 1. Petition to Appoint an Arbitrator

If a party to arbitration engages in dilatory conduct and an arbitrator has not been appointed, the other party may petition the trial court to appoint an arbitrator under section 1281.6. "In the absence of an agreed method [to appoint an arbitrator], or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails to act and his or her successor has not been appointed, the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator." (§ 1281.6.)

Once an arbitrator has been appointed, the arbitration may proceed even without the participation of one of the parties: "If a court has ordered a person to arbitrate a controversy, the arbitrators may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party ordered to arbitrate, who has been duly notified, to appear." (§ 1282.2, subd. (e).)

#### 2. Dismissal of Arbitration for Unreasonable Delay

A malpractice claimant in arbitration, like a plaintiff in litigation, is responsible for exercising diligence to advance the

matter to resolution. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 980 (*Engalla*).) "An arbitrator has discretion to dismiss a proceeding due to unreasonable delay by the claimant in bringing the matter to a hearing." (*Burgess v. Kaiser Foundation Hospitals* (1993) 16 Cal.App.4th 1077, 1081 (*Burgess*).) Section 583.310, which requires dismissal of an action if it is not brought to trial within five years, applies directly only to actions at law. (*Brock*, *supra*, 10 Cal.App.4th at p. 1793, citing *Young v. Ross–Loos Medical Group, Inc.* (1982) 135 Cal.App.3d 669, 673 [former section 583].) The concepts and limits of section 583.310, however, "have been imported into the test of reasonable diligence in bringing a claim to arbitration. Thus, if a matter is not brought to arbitration within five years, the arbitrator may dismiss the matter for failure to proceed with reasonable diligence. [Citations.]" (*Burgess*, *supra*, 16 Cal.App.4th at p. 1081.)

Once an arbitrator has been appointed by the parties or by the court pursuant to section 1281.6, a party can apply to the arbitrator for dismissal of the arbitration proceedings based on a delay in discovery or failure to pursue the arbitration claim with reasonable diligence. (*Brock*, *supra*, 10 Cal. App.4th at pp. 1804, 1808.) "[T]he arbitrator (once appointed) has authority to determine whether a party should take nothing because of that party's unwarranted delay in prosecuting the arbitration proceedings. [Citation.]" (*Id.* at p. 1804, italics omitted.)

The trial court has no power to dismiss a contractual arbitration proceeding for unreasonable delay in prosecution. (*Brock*, *supra*, 10 Cal.App.4th at p. 1793.) There is no provision under the CAA that allows filing a petition in the trial court to dismiss an arbitration. (*Id.* at p. 1805.) The *Brock* court

25

persuasively rejected contrary reasoning found in earlier decisions, including *Lockhart-Mummery v. Kaiser Foundation Hospitals* (1980) 103 Cal.App.3d 891, 898 (*Lockhart-Mummery*) and *Preston v. Kaiser Foundation Hospitals* (1981) 126 Cal.App.3d 402, 406 (*Preston*). (*Brock*, *supra*, 10 Cal.App.4th at pp. 1799–1800, 1803–1805.)[6] Based on our review of the judgment and the record, the trial court in this case did not purport to dismiss the arbitration proceeding, which the court did not have power to dismiss, when the court entered judgment dismissing *Lerner III*.

---

[6] We note that the trial court also cannot dismiss an action at law that has been stayed pending arbitration for failure to prosecute. The calculation of the five-year period to bring an action to trial under section 583.310 excludes any time during which prosecution of the action was stayed (§ 583.340, subd. (b)), so an action which is stayed pending arbitration cannot be dismissed for failing to bring it to trial within five years. (*Brock*, *supra*, 10 Cal.App.4th at p. 1793.) It is impossible for the plaintiff to proceed in the legal action when a stay pending arbitration is in effect. (*Ibid*.) A party's level of diligence in arbitration has no bearing on the five-year requirement to bring the action at law to trial. (*Id*. at p. 1800.) The *Brock* court persuasively rejected the reasoning of *Lockhart-Mummery*, *supra*, 103 Cal.App.3d at pages 896–897 (*Lockhart-Mummery*), which was decided prior to amendment of section 583.340, subdivision (b). (*Brock*, *supra*, 10 Cal.App.4th at pp. 1797–1799; cf. *Gaines*, *supra*, 62 Cal.4th at pp. 1095–1096 [approving but distinguishing *Brock*].)

### 3. Compare: Waiver of Right to Compel Arbitration

In comparison, in the context of a petition to compel arbitration, the trial court has jurisdiction to decide whether a party's dilatory conduct has waived the right to compel arbitration.[7] (*Engalla, supra,* 15 Cal.4th at p. 982 & fn. 14.) Although a petition to compel arbitration is typically filed prior to initiating arbitration, after arbitration has voluntarily commenced, a petition to compel arbitration may be appropriate in a subsequent legal action for claims governed by the arbitration agreement. In *Engalla*, the claimants abandoned on-going arbitration proceedings and filed a medical malpractice action in superior court, causing the defendant health care organization to file a petition in court to compel arbitration. (*Id.* at pp. 669–970.) The claimants opposed the petition on the ground that the defendant waived the right to compel arbitration

---

[7] A party petitioning to compel arbitration has the burden to prove a valid arbitration agreement exists that covers the dispute. (*Engalla, supra,* 15 Cal.4th at p. 972.) If that burden is met, the party opposing arbitration has the burden to prove any defense to the petition or motion to compel arbitration. (*Ibid.*) Unlike summary judgment, in summary proceedings to compel arbitration under sections 1281.2 and 1290.2, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination. [Citation.]" (*Ibid.*) Waiver of the right to arbitrate is usually a question of fact, which the appellate court reviews for substantial evidence to support the finding. (*Id.* at p. 983.)

through dilatory conduct in the arbitration proceedings.[8] (*Id.* at pp. 982–983.) The California Supreme Court concluded the trial court had jurisdiction under section 1281.2, subdivision (a), to determine within the context of a petition to compel arbitration whether the petitioning party waived the right to compel arbitration through delay or other conduct. (*Id.* at pp. 982–983.)[9]

---

[8] The claimants in *Engalla* were a health care patient and his family members, who initiated arbitration with the defendant through a timely demand to arbitrate. (*Engalla*, *supra*, 15 Cal.4th at pp. 961–962.) There was evidence that despite diligent effort by the claimants, the defendant delayed in selecting arbitrators and scheduling depositions, and widespread delays were endemic to the defendant's arbitration program. (*Id.* at pp. 963–968.) The patient died and his spouse lost a significant claim. (*Id.* at p. 969.) The family members abandoned the arbitration proceeding, filed an action in the trial court, and refused to continue the arbitration process. (*Id.* at pp. 969–970.) The defendant filed a petition in the trial court action to compel arbitration and stay the court proceeding. (*Id.* at p. 970.) The California Supreme Court concluded there were facts to support the defenses of rescission and waiver, so remanded the matter to the trial court to resolve conflicting evidence. (*Id.* at pp. 981–982, 983–984.)

[9] No single test describes the conduct that constitutes a waiver of the right to compel arbitration (*Engalla*, *supra*, 15 Cal.4th at p. 983), but the Supreme Court has affirmed that the following factors are properly considered when assessing waiver claims: """(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested

28

The *Engalla* court concluded a trier of fact could find that the defendant's pattern of delay, which was arguably unreasonable or conducted in bad faith, waived the arbitration agreement and allowed the claimants to proceed in court. (*Engalla, supra*, 15 Cal.4th at p. 984.) The court emphasized that "the delay must be substantial, unreasonable, and in spite of the claimant's own reasonable diligence. When delay in choosing arbitrators is the result of reasonable and good faith disagreements between the parties, the remedy for such delay is a petition to the court to choose arbitrators under section 1281.6, rather than evasion of the contractual agreement to arbitrate. The burden is on the one opposing the arbitration agreement to prove to the trial court that the other party's dilatory conduct rises to such a level of misfeasance as to constitute a waiver [citation], and such waiver 'is not to be lightly inferred' [citation]." (*Id.* at p. 984.)

arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."' [Citations.]" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).) California's strong public policy favoring arbitration agreements requires close scrutiny of waiver claims. (*Id.* at p. 1195.) "Although a court may deny a petition to compel arbitration on the ground of waiver (§ 1281.2, subd. (a)), waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof. [Citations.]" (*Ibid.*)

## Appealability

The doctors contend that the order denying the petition to appoint an arbitrator was directly appealable, either because it was a final judgment in an independent proceeding or because it was the functional equivalent of an order denying a petition to compel arbitration. As a result, they contend, the appeal from the judgment more than eight months later was untimely. We conclude that under the circumstances of this case, the order denying the petition was not directly appealable, but is reviewable in connection with the appeal from the judgment.

An appeal can be taken from an appealable order or judgment only, as provided by statute and developed in the case law. (*J.H. Boyd Enterprises, Inc. v. Boyd* (2019) 39 Cal.App.5th 802, 810 (*J.H. Boyd*); *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 384 (*Aixtron*).) Section 904.1 provides the general list of appealable judgments and orders in civil actions, which stems from the "one final judgment rule." (*Aixtron*, *supra*, at p. 384.) A judgment that is a final determination of the rights of the parties in an action or proceeding, with no issue left for future consideration except compliance, is appealable. (*Ibid*.)

The proceedings authorized under the CAA are considered special proceedings.[10] (*Bagration v. Superior Court* (2003) 110

---

[10] "Judicial remedies are divided into two classes: actions and special proceedings. (Code Civ. Proc., § 21.) 'An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.' (Code Civ. Proc., § 22.) 'Every other remedy is a special proceeding.' (Code Civ. Proc., § 23.) As

---

Cal.App.4th 1677, 1685, fn. 7 (*Bagration*); 3 Witkin, Cal. Procedure (5th ed. 2020) Actions, § 65.) Unless a statute provides otherwise, a final judgment in a special proceeding is also appealable under section 904.1. (9 Witkin, Cal. Procedure (5th ed. 2020) Appeal, § 139.)

Pursuant to the one final judgment rule, an appellate court cannot review intermediate rulings until the final resolution of the case. (*Aixtron*, *supra*, 52 Cal.App.5th at p. 384.) An order or judgment that fails to dispose of all causes of action between the parties is not appealable, and an appeal from a non-appealable order or judgment must be dismissed. (*Ibid.*) On appeal from a final judgment, however, in addition to reviewing the verdict or decision, the appellate court may review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party." (§ 906.) The appellate court cannot review, however, an order which the parties could have appealed directly. (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1344–1345.)

Section 1294 confers a direct right to appeal from the following orders under the CAA: "(a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d) A judgment entered pursuant to this title. [¶] (e) A special order after final judgment." (§ 1294.)

---

a general rule, a special proceeding is statutory in origin and does not proceed according to common law. [Citation.]" (*Bagration*, *supra*, 110 Cal.App.4th at pp. 1684–1685, fns. omitted.)

31

"The appeal shall be taken in the same manner as an appeal from an order or judgment in a civil action. Upon an appeal from any order or judgment under this title, the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party. The court may also on such appeal review any order on motion for a new trial. The respondent on the appeal, or party in whose favor the judgment or order was given may, without appealing from such judgment, request the court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment or order from which the appeal is taken. The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken." (§ 1294.2.)

An order denying a petition to appoint an arbitrator is not one of the rulings that section 1294 makes directly appealable. A petition to appoint an arbitrator may be filed as an independent proceeding or within an action at law. In this case, the Lerners' petition was filed within their action to enforce the parties' stipulation. The order denying the petition was not a final determination of the parties' rights under the stipulation to arbitrate; it was an intermediate proceeding involving the merits of the action and necessarily affecting the judgment, and thus reviewable on appeal from the final judgment of dismissal.

The doctors contend on appeal that the order denying the petition was the functional equivalent of an order dismissing an independent proceeding, because there was no issue remaining

for trial. The petition was not brought as an independent proceeding, however, but within the context of a pending action related to the arbitration agreements. A judgment dismissing the matter was not entered until eight months later, after the trial court granted the doctors' summary judgment motion. The Lerners timely appealed from the judgment of dismissal.

The doctors also contend that the order denying the petition to appoint an arbitrator was effectively an order denying a petition to compel arbitration, and therefore, directly appealable under section 1294, subdivision (a). This is incorrect. First, a petition to compel arbitration under section 1281.2 and a petition to appoint an arbitrator under 1281.6 are distinct procedures under the CAA with different purposes. The Legislature decided an order denying a petition to compel arbitration should be directly appealable under section 1294, but did not include an order denying a petition to appoint an arbitrator on the same list of appealable orders.

Second, the petition to appoint an arbitrator in this case was not substantively a petition to compel arbitration. The purpose of a petition to compel arbitration is to determine whether an enforceable arbitration agreement exists, and if so, to order the parties to litigate their dispute before an arbitrator. In this case, the trial court had already ordered the parties to arbitrate based on the parties' stipulation, and the parties had submitted their dispute to the jurisdiction of the arbitrators by commencing arbitration proceedings. The Lerners' petition sought assistance selecting an arbitrator for the pending arbitration. Appointment of an arbitrator enables the arbitration to proceed regardless of whether all of the parties participate in the arbitration. The petition to appoint an arbitrator was not the

33

equivalent of a petition to compel arbitration, because it did not seek to submit the controversy to arbitration and did not compel the doctors to participate in the arbitration. The order denying the Lerners' petition to appoint an arbitrator was not substantively an order denying a petition to compel arbitration.

The cases relied on by the doctors are distinguishable. In *Young v. Ross–Loos Medical Group, Inc.*, *supra*, 135 Cal.App.3d at pages 671–672, an arbitrator dismissed arbitration proceedings for failing to prosecute within five years, but the trial court granted a motion to vacate the arbitrator's order of dismissal. On appeal, the appellate court found the arbitrator's order was effectively an "award," so the trial court's order was directly appealable under section 1294 as an order vacating an award. No award has been made in the instant case, and as explained above, the order denying the petition to appoint an arbitrator was not the functional equivalent of an order denying a petition to compel arbitration.

In *Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1211–1212, the parties filed competing petitions in the trial court to compel arbitration before different alternative dispute resolution providers. The trial court denied the defendants' petition to compel arbitration, and the defendants appealed. The appellate court reviewed the trial court's authority under section 1281.6 to compel compliance with the agreed method for selecting an arbitrator as part of the defendants' appeal from an order denying a petition to compel arbitration, which is an appealable order under section 1294. In the instant case, the order denying the petition to appoint an arbitrator was not issued as part of an order made appealable by the statute. It

34

was reviewable in connection with the appeal from the final judgment in the action.

The trial court did not vacate the order to arbitrate issued in *Lerner I*, so the order denying the petition to appoint an arbitrator cannot be characterized as an order denying a petition to compel arbitration for that reason either.  (Cf. *CPI Builders, Inc. v. Impco Technologies, Inc.* (2001) 94 Cal.App.4th 1167, 1171 [order vacating prior order compelling arbitration was, in effect, an order denying a petition to compel arbitration appealable under section 1294, subdivision (a)].)

## Denial of Petition to Appoint an Arbitrator

The Lerners contend that the trial court did not have discretion under section 1281.6 to deny their petition to appoint an arbitrator based on a determination that they unreasonably delayed in the arbitration proceedings.  We agree.

Section 1281.6 provides in full:  "If the arbitration agreement provides a method of appointing an arbitrator, that method shall be followed.  If the arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed.  In the absence of an agreed method, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails to act and his or her successor has not been appointed, the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator.  [¶]  When a petition is made to the court to appoint a neutral arbitrator, the court shall nominate five persons from lists of

35

persons supplied jointly by the parties to the arbitration or obtained from a governmental agency concerned with arbitration or private disinterested association concerned with arbitration. The parties to the agreement who seek arbitration and against whom arbitration is sought may within five days of receipt of notice of the nominees from the court jointly select the arbitrator whether or not the arbitrator is among the nominees. If the parties fail to select an arbitrator within the five-day period, the court shall appoint the arbitrator from the nominees." (§ 1281.6.)

Whether section 1281.6 permits a trial court to deny a petition to appoint an arbitrator based on finding unreasonable delay in the arbitration proceedings is an issue of statutory interpretation which we review de novo. (See *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 657 [trial court's discretion under section 1281.4 to lift stay of litigation pending arbitration on the ground that party could not afford arbitration costs was an issue of statutory interpretation subject to de novo review].) "'In construing any statute, "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' [Citation.]" (*Doe v. Brown* (2009) 177 Cal.App.4th 408, 417.)

The plain language of the statute states that the trial court must appoint an arbitrator if the parties' agreed method fails or cannot be followed. Unlike section 1281.2, which allows the trial court to deny a petition to compel arbitration if the court finds a party has waived the right to compel arbitration, the provisions of section 1281.6 are mandatory and do not authorize the court to deny a petition based on waiver of the right to appointment of an arbitrator. In this case, the court did not find that the parties could follow the agreed method for selection of an arbitrator without assistance from the court. Under the circumstances, the statute required the trial court to nominate arbitrators from lists supplied by the parties, an appropriate agency, or a dispute resolution association.

Based on our conclusion that the trial court was required to expedite the arbitration by appointing an arbitrator, the order denying the petition to appoint an arbitrator, as well as the order granting summary judgment and the judgment of dismissal must be reversed to allow the trial court to appoint an arbitrator.

## Additional Procedural Requirements

The doctors raise a variety of additional procedural contentions on appeal which we reject.

### A. Continuing Jurisdiction

The doctors contend that the Lerners' petition to appoint an arbitrator was properly denied, because under the continuing jurisdiction provisions of section 1292.6, all subsequent petitions

37

were required to have been filed within *Lerner I*. We conclude that the petition may not be denied on this basis.

First, the language of the statute requiring that subsequent petitions be filed in the same proceeding does not address the circumstances of this case. After a petition has been filed under the CAA, the court in which the petition is filed retains jurisdiction to determine subsequent petitions related to the same arbitration agreement and dispute, and any subsequent petition must be filed in the same proceeding. (§ 1292.6.) But in this case, no petition under the CAA was filed in *Lerner I* before the court dismissed the action. Based on the language of the statute, section 1292.6 did not apply. The trial court ordered the action stayed pending arbitration based on the parties' stipulation. The stipulation and the trial court order provided for the court to retain jurisdiction over subsequent petitions under the CAA, but did not require that subsequent petitions be filed in the same proceeding.

In addition, the doctors brought a petition to appoint an arbitrator within *Lerner I* and the trial court concluded that it did not have jurisdiction to consider the petition because the action was no longer pending. The doctors did not appeal the ruling and the decision became final. The doctors cannot now argue that the trial court had jurisdiction in the prior matter.

We note that no prejudice to the doctors has been shown as a result of the Lerners filing their petition to appoint an arbitrator within *Lerner III*. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or a new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted

in a miscarriage of justice."])  The Lerners' petition invoked the court's jurisdiction to assist with the ongoing arbitration proceeding, which was independent of the prior action.  The matters were related and transferred so that the petition was heard by the same trial court judge who oversaw the prior proceeding.  We decline to find error where the trial court judge who determined the petition could not be heard in Lerner I concluded that the petition could be considered in Lerner III.

## B.  Motion for Reconsideration

The doctors also contend that the Lerners' petition to appoint an arbitrator in *Lerner III* was an untimely and improper motion for reconsideration of the denial of the doctors' petition to appoint an arbitrator in *Lerner I*.  We disagree.  More than one petition to appoint an arbitrator may be filed during the course of an arbitration.  With respect to the prior petition, the trial court concluded that it lacked jurisdiction to appoint an arbitrator within *Lerner I* because the case had been dismissed.  The trial court did not rule on the merits of the petition that the court could not appoint an arbitrator under any circumstances, even if the petition were properly presented.  Indeed, the trial court's decision to take up the petition in *Lerner III* makes clear that its prior refusal to take up the matter in *Lerner I* was not a ruling on the merits. The doctors' contention that the Lerners' petition was barred by the doctrines of claim and issue preclusion is also incorrect; the trial court order denying the prior petition was not a final judgment on the merits of the issue.

39

## C.  Adequacy of Petition

The doctors also contend that the Lerners petition was properly denied because it was inadequate.  Specifically, the petition failed to supply a list of arbitrators required under section 1281.6.  However, section 1281.6 allows the court to nominate arbitrators from lists obtained from certain government agencies as an acceptable alternative to lists supplied by the parties.

## DISPOSITION

The judgment, the order granting summary judgment, and the order denying the petition to appoint an arbitrator are reversed.  The trial court is directed to enter a new and different order granting the petition to appoint an arbitrator.  Appellants Bruce and Kimberly Lerner, individually and as guardian ad litem for Jacob Lerner, are awarded their costs on appeal.


MOOR, J.

I concur:


RUBIN, P. J.

Kimberly Lerner et al. v. Lisa Masterson et al.

B297323


BAKER, J., Concurring


The majority opinion holds the trial court must assist the parties in appointing an arbitrator (and the arbitrator appointed can then address—if asked to do so—the question this court does not: whether the more-than-a-decade delay in bringing the matter to an arbitration hearing is unreasonable and warrants dismissal of the arbitration). I agree with that narrow holding and therefore do not have an occasion at this time to set forth my own views as to whether the arbitration proceedings should be dismissed for prejudicial delay.


BAKER, J.